Gordon B. ALLEN, Plaintiff,

v.

COLGATE–PALMOLIVE COMPANY, James F. Flood, William W. Kneebone, Joseph H. Maday and Ralph A. Champlin, Defendants.

No. 79 Civ. 1076–CSH.

United States District Court,
S. D. New York.

Dec. 23, 1981.

58

**60**

Finley, Kumble, Wagner, Heine & Underberg, New York City, for plaintiff; Carl A. Schwarz, Jr., Raymond L. Vandenberg, New York City, of counsel.

Epstein, Becker, Borsody & Green, New York City, for defendants; Ronald M. Green, Susan Schenkel Savitt, Dennis Lalli, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This is an action brought to redress alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Plaintiff, a former employee of defendant Colgate-Palmolive Company ("Colgate"), claims that he was both demoted and forced into early retirement on account of his age. The case is presently before the Court on defendants' motion for summary judgment in their favor dismissing the complaint or for partial summary judgment, and on plaintiff's cross-motion for an order compelling discovery.

### I.

The following facts appear from the affidavits and exhibits submitted on the motion.

Plaintiff Gordon Allen was employed by Colgate from April 1937 until February 28, 1977. Originally employed as a clerk in the mailroom, plaintiff eventually became a salesperson for Colgate, and, in 1962, attained the position of District Manager, Personal Care Products Division, Northeast Region. In mid-1972, following a nationwide reorganization of Colgate's sales structure, plaintiff was demoted to the position of Area Manager. Plaintiff's base salary was not diminished as a result of the demotion, but it appears that his total remuneration, including potential bonuses and anticipated retirement benefits, was reduced.

The record has not been developed fully with respect to plaintiff's performance as an Area Manager; the only contemporaneous job evaluation presently before the Court is plaintiff's 1975 Performance Review, signed by defendants Flood and Maday, which states that plaintiff was "[n]onpromotable due to age." Exhibit 2 to Affidavit of Gordon Allen, sworn to February 14, 1980. Plaintiff remained an Area Manager until October 1976, when he was informed that effective January 1, 1977, he would once again be demoted with no diminishment in base salary, this time to the position of salesperson. Plaintiff was then sixty years of age.

The demotion never took effect. Instead, plaintiff began discussing with Colgate personnel the possibility of retiring early in lieu of demotion. In late December 1976, plaintiff took some vacation days; in early January 1977, he allegedly became ill and submitted a physician's note to excuse his absence from work for two weeks. Approximately two months passed, however, without plaintiff returning to Colgate. During this time, plaintiff received an Area Manager's base salary and commissions. Finally, plaintiff was given the following choice: return to work as a salesperson; take a leave of absence without pay from Colgate; or retire early. Plaintiff chose the latter option, although in a letter to Maday dated March 7, 1977, he expressed his opinion that his retirement was forced by Colgate. Exhibit E to Affidavit of

Frank J. Borges, Colgate Director of Compensation Administration and Employee Services, sworn to December 20, 1979. Plaintiff retired effective March 1, 1977, from the position of Area Manager. Since his retirement, he has been receiving substantial retirement benefits pursuant to the Colgate-Palmolive Company Employees Retirement Income Plan as Amended Effective January 1, 1977 (the "Plan"). The pertinent provisions of that Plan were in effect prior to the enactment of the ADEA.

On June 23, 1977, plaintiff filed the requisite notice of intent to sue with the United States Department of Labor ("DOL"). In the notice, which named Colgate as a potential defendant but omitted any mention of the individual defendants named herein, plaintiff alleged that his demotions and "involuntary early retirement" were prompted by age discrimination. On September 1, 1977, the DOL notified plaintiff of his right to sue Colgate. That same day, plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR"), naming as respondents all defendants named herein except defendant Champlin. On May 29, 1978, the NYSDHR notified plaintiff that it found probable cause to believe that respondent had engaged in the discriminatory acts complained of. On February 28, 1979, the instant complaint was filed. Defendant Champlin has not yet been served. The complaint in essence alleges that, at the time of his first demotion in 1972, his second demotion in 1976, and his "termination" on March 1, 1977, plaintiff was the victim of willful age discrimination on the part of defendants, which resulted in lost wages and benefits, as well as pain and suffering and other injury. With respect to his departure from Colgate, plaintiff asserts that his early retirement was not a product of his choice at all, but was in fact the practical equivalent of a constructive discharge from Colgate. Plaintiff contends that the foregoing constitutes a *prima facie* violation of § 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1).

On the instant motion for summary judgment, defendants claim that even if plaintiff had been forced to retire early because of his age, plaintiff was nevertheless retired pursuant to the terms of a bona fide retirement plan. Thus, according to defendants, the conduct at issue falls within the exemption to the proscriptions of the ADEA set forth in § 4(f)(2) of the Act, 29 U.S.C. § 623(f)(2), as that subsection existed at the time plaintiff retired, or, at least, that defendants had a good faith belief that it did. Second, defendants contend that the complaint should be dismissed as time-barred. Third, they argue that plaintiff's claim for compensatory damages other than those for lost wages and benefits is not cognizable under the ADEA; that, because plaintiff was paid his full base salary until he retired, he would be entitled to neither lost wages nor lost benefits if defendants prevail on the issue of the § 4(f)(2) defense; and that, as a consequence, plaintiff's claim for liquidated damages fails as well. Finally, the individual defendants assert that, because they were not named in the notice of intent to sue, the Court lacks subject matter jurisdiction over the complaint as against them; defendant Champlin cites as an additional jurisdictional defect plaintiff's failure to name him in the complaint filed with the NYSDHR.

Following the order adopted by the parties in their briefs, I address first these arguments, and then turn to plaintiff's cross-motion to compel discovery.

## II.

### A. *§ 4(f)(2) Defense*

█ Section 4(a) of the ADEA renders it

"unlawful for an employer—

"(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

The Act, however, does not make every early retirement unlawful. Rather, prior to

the 1978 amendments to the ADEA, § 4(f)(2) provided in pertinent part:

"It shall not be unlawful for an employer . . .

"(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual. . . ." 29 U.S.C. § 623(f)(2).[1]

Thus, an employer seeking to establish that its conduct falls within the § 4(f)(2) exemption must prove three elements:[2] (1) that, in retiring its employee, it was "*observ[ing] the terms* of (2) a "*bona fide*" retirement plan (3) which is not a "*subterfuge to evade*" the purposes of the ADEA. *Smart v. Porter Paint Co.*, 630 F.2d 490, 493 (7th Cir. 1980); *see United Airlines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 444 (1977).

▪ In the case at bar, the latter two elements are not seriously disputed. The Colgate Retirement Plan pursuant to which

plaintiff is receiving benefits is bona fide in that it in fact "exists and pays substantial benefits," *Brennan v. Taft Broadcasting Co.*, 500 F.2d 212 (5th Cir. 1974); *Smart, supra*, 630 F.2d at 494; *Marshall v. Atlantic Container Line*, 18 Fair Empl.Prac.Cas. 1167, 1173–74 (S.D.N.Y.1978), *motion reconsidered*, 470 F.Supp. 71 (S.D.N.Y.1979); in plaintiff's case, he is presently receiving more than $1400 monthly. Furthermore, since the Plan was adopted prior to enactment of the ADEA, it cannot, by definition, be a subterfuge to evade the purposes of the ADEA. *McMann, supra*, 434 U.S. at 203, 98 S.Ct. at 450. At issue in this case is whether Colgate "observe[d] the terms" of its retirement plan when it retired plaintiff in 1977.[3]

▪ Defendants assert that the first element of the § 4(f)(2) defense—that the employer "observe the terms" of a plan—is a simple one, satisfied where, as defendants contend is the case here, the plan permits involuntary retirement at the option of the employer, and the employee is not merely discharged, but receives substantial postretirement benefits. *See, e.g., Marshall v.*

---

**1.** Section 4(f)(2) was amended in 1978. It now expressly prohibits involuntary early retirement premised on age:

"It shall not be unlawful for an employer . . .
"(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by § 631(a) of this title because of the age of such individual. . . ."

29 U.S.C. § 623(f)(2), as amended, Pub.L.95-256, § 2(a), Apr. 6, 1978, 92 Stat. 189.
The amendment has been held to have prospective effect only. *See, e.g., Smart v. Porter Paint Co.*, 630 F.2d 490, 497 (7th Cir. 1980); *Marshall v. Atlantic Container Line*, 18 Fair Empl.Prac.Cas. 1167, 1169-72 (S.D.N.Y.1978). Thus, it would not be applicable to the case at bar, in which plaintiff's retirement was effected prior to the amendment.

**2.** The burden of proving the availability of the § 4(f)(2) defense rests on the employer. *Sexton v. Beatrice Foods Co.*, 630 F.2d 478, 486 (7th Cir. 1980); *Marshall v. Atlantic Container*

*Line*, 18 Fair Empl.Prac.Cas. 1167, 1173 (S.D.N.Y.1978).

**3.** For purposes of this discussion, it is assumed that plaintiff was *involuntarily* retired due to his *age*. Obviously, if it were found that Colgate's conduct with respect to plaintiff did not amount to a constructive, forced retirement of plaintiff, and that plaintiff instead voluntarily retired from Colgate's employ, or if it were found that Colgate's conduct, even if it were construed as a discharge of plaintiff, was prompted by bona fide reasons other than age, § 4(a)(1) of the ADEA would not be implicated and the exemption provided by § 4(f)(2) would be irrelevant. For purposes of a motion for summary judgment, the facts must be viewed in the light most favorable to plaintiff, the party opposing the motion for summary judgment. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The Court therefore assumes without deciding that plaintiff, although he "chose" to retire early rather than be demoted, was constructively discharged from Colgate because of his age. For a general discussion on constructive discharge, see *Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 305 (5th Cir. 1981).

*Hawaiian Telephone Co.*, 575 F.2d 763 (9th Cir. 1978); *Zinger v. Blanchette*, 549 F.2d 901 (3d Cir. 1977), *cert. denied*, 434 U.S. 1008, 98 S.Ct. 717, 54 L.Ed.2d 750 (1978). Plaintiff urges that the requirement is more complex, and that the plan at issue must mandate involuntary retirement, as was the case in *McMann*, or, at the least, that the retirement itself should be based on reasons in addition to the employee's age. *See, e.g., Cowlishaw v. Armstrong Rubber Co.*, 450 F.Supp. 148 (E.D.N.Y. 1978); *Hannan v. Chrysler Motors Corp.*, 443 F.Supp. 802 (E.D.Mich.1978). *See generally, Havelick v. Julius Wile Sons & Co., Inc.*, 445 F.Supp. 919 (S.D.N.Y.1978). I need not resolve these issues, however, because I find that the terms of the Colgate Plan neither mandate early retirement nor provide for it at the employer's option, and that in fact the relevant terms of the Plan disavow any connection between the Plan and involuntary retirement at Colgate's option.

The Colgate Plan provides for a "normal retirement date," which is defined in Article V ("Retirement Dates"), ¶ 1, as "the first of the month next following the Member's sixty-fifth birthday"; for continued employment after the normal retirement date, which, under Article V, ¶ 2, may be requested by Colgate under specified conditions; and for early retirement. Pursuant to Article V, ¶ 3, "[a]n active Member *may retire* at an Early Retirement Date, which may be the first of any month after his fifty-fifth birthday" (emphasis added). Other references to an early retirement date are found throughout the Plan. For example, ¶ 11 of Article III, the definitional article, states that:

> " 'Retirement Date' means a Member's Normal Retirement Date unless an Early Retirement Date has been *duly elected* in which case the term 'Retirement Date' shall mean the Member's Early Retirement Date in the case of an Active Employee." (emphasis added).

Article V, ¶ 5, provides:

> "In the case of a Member with respect to whom a Cash Refund Joint and Survivor

Annuity form shall have been elected and *whose request for an Early Retirement Date* is not received at least two years prior to the Early Retirement Date so requested, evidence of the good health of the Employee will be required as a condition for the *election of the Early Retirement Date.* If such evidence of good health is not furnished, a Member who satisfies the other requirements *for electing* an Early Retirement Date may nevertheless elect to have annuity payments commence at the Early Retirement Date desired on the following basis: . . ." (emphasis added).

Finally, in referring to the amount of retirement income, Article VI, ¶ 2, states in pertinent part:

> "At Early Retirement Date each Member, *who elects to retire at Early Retirement Date*, directly from the employment of the Company, will be entitled to receive a monthly retirement income on the normal form commencing at his Early Retirement Date." (emphasis added).

As the highlighted portions indicate, early retirement is characterized throughout these clauses as an option of the employee. Defendants concede this point, but dispute plaintiff's claim that these provisions give the employee, and the employee alone, the sole right to elect early retirement. Defendants synthesize their position as follows:

> "Article V, ¶ 3 does *not* provide that *only* an employee may elect early retirement. While it does indeed create in the member employee a right to *choose* early retirement, it does not refer to, and thus cannot be read to prohibit, retirement at Colgate's option. The Plan must be examined as a whole to determine Colgate's right to require an employee to retire early." Defendants' Reply Brief at 10.

Defendants assert that in retiring plaintiff, they observed the terms of the Plan found in Article XIV ("General Provisions"), ¶ 6, which provides:

> "No provision in the Plan shall be deemed or construed to impair or affect in any manner whatsoever the right of the Com-

**64**

pany in its discretion at any time to employ persons as Employees, discharge or terminate the service of any employee or Member of the Plan, or to retire any Employee or Member of the Plan, and every such right shall remain with the Company as if the Plan were not in existence and had not been established."

Defendants contend that ¶ 6 empowers Colgate to retire involuntarily an employee prior to the employee's normal retirement date, all in observance of ¶ 6. The plain language of ¶ 6, however, squarely controverts defendants' position. While ¶ 6 refers to the right of Colgate "in its discretion at any time ... to retire any employee," that right remains with Colgate "*as if the Plan were not in existence and had not been established.*" Clearly, Colgate's right to retire an employee early does not emanate from the Plan, but rather exists separate and apart therefrom; ¶ 6 is merely a means of stating that *if* the employer has the authority from some other source to retire involuntarily an employee, the Plan does not limit or otherwise affect such authority. But if the employer derives that authority from some other source, ¶ 6 cannot be construed as providing it. If the provisions of the Plan shall not "affect in any manner whatsoever" Colgate's right to retire its employees, and if the right to instigate involuntary early retirement remains with Colgate "as if the Plan were not in existence and had not been established," how then can the actions of Colgate in invoking that independent right be said "to observe the terms of" the Plan? It cannot be, and thus defendants cannot now be heard to premise plaintiff's retirement on the Plan and its terms in order to avail themselves of the § 4(f)(2) defense.

4. The provision read in full:
   *"No Enlargement of Participant Rights*
   "This Plan is strictly a voluntary undertaking on the part of the Participating Employers and shall not be deemed to constitute a contract with any Participant, or to be considered for, or an inducement to, or a condition of, the employment of any Participant. Nothing contained in this Plan shall be deemed to give any Participant the right to be retained in the service of any Employer or

A provision substantially similar to ¶ 6 was at issue in *Sexton v. Beatrice Foods Co.*, 630 F.2d 478 (7th Cir. 1980). The plan in *Sexton* provided for early retirement at the employee's option, but, as in the case at bar, set forth no specific guidelines for early retirement at the employer's option. The only provision which arguably gave the employer in *Sexton* that right, found in a section entitled "Miscellaneous" (in the case at bar, ¶ 6 is found in the Article entitled "General Provisions"), provided in pertinent part:

"Nothing contained in this Plan shall be deemed to give any participant the right to be retained in the service of any Employer or to interfere with the right of any Employer to discharge or retire any of its employees at any time." 630 F.2d at 489.[4]

The Court held that "such a general provision does not give [the employer] the power to force employees to retire before the normal retirement age for purposes of a § 4(f)(2) defense..." *Id.* That is because the language at issue was "too broad and vague" to be construed as vesting in the employer this power:

"Far more than niceties of draftsmanship are involved in the requirement that the right of the employer to force retirement be expressly included in the Plan itself. Aside from its obvious purpose to provide financial benefits, one of the paramount purposes of a retirement plan or program is to put employees on notice when they may reasonably expect to be terminated, or retired. Certainly it is a far different thing to retire an employee at age 55 (even with 'substantial' benefits) than to allow him the benefit of a regular salary until age 65 and *then* retire him with

to interfere with the right of any Employer to discharge or retire any of its employees at any time. No Participant shall have any right to or interest in any portion of any fund arising from the contributions by the Participating Employers under this Plan, other than as herein specifically provided. No person shall have any right to a retirement pension under this Plan, except to the extent provided herein."

(presumably enhanced) 'substantial' benefits. Thus, if an employee knows that he has a realistic expectation of forced retirement at, for example, age 55, and he elects to continue to work for his employer on this basis, some elements of the potential unfairness and discrimination of early retirement have been removed. In addition, an employee having realistic notice that he may face early retirement may have an opportunity to make provisions through savings, through the securing of a second job, and otherwise for the contingencies which he faces. Fair notice, consistency and the absence of discrimination are the touchstones of policy in this area."

*Id.* (emphasis in original); *see Gonsalves v. Caterpillar Tractor Co., Inc.,* 634 F.2d 1065 (7th Cir. 1980), *cert. denied,* 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981); *Benzel v. Valley National Bank,* 633 F.2d 1325 (9th Cir. 1980); *EEOC v. Baltimore & Ohio R.R.,* 632 F.2d 1107 (4th Cir. 1980), *cert. denied,* 26 Fair Empl.Prac.Cas. 1687 (1981). The concurring opinion was more succinct:

"I concur in the judgment. No provision of the [employer's] retirement plan can be construed as granting [the employer] the option to compel the involuntary retirement of an employee prior to age sixty-five. Accordingly, it is impossible for [the employer] to have 'observed' a non-existent term of the retirement plan and therefore impossible for [the employer] to claim an exemption under Section 4(f)(2) of the Act. No more need be said."

630 F.2d at 489 (Bauer, J. concurring).

■ Defendants argue, however, that even if the Colgate Plan contains no provision for early retirement at the employer's option, "plaintiff's retirement 'observe[d] the terms of' the Plan because his retirement conformed to all the terms of the Plan and conflicted with none." Defendants' Reply Brief at 11. It is true that plaintiff is receiving all the benefits due a person who retires at his age and with his years of service; it is equally clear that the Plan does not prohibit early retirement at Colgate's option. But the *Sexton* court's rationale requires that the employer's right to force retirement be "expressly included" in the Plan. Thus, while it may be argued that such a forced retirement does not conflict with the terms of the Plan, it certainly does not conform to them. The absence of a provision expressly providing for involuntary retirement at or after a specified age and under specified conditions is fatal to a claim that an employer "observe[d] the terms of" a bona fide retirement plan. *Benzel, supra; Sexton, supra,* 630 F.2d at 481–85; *EEOC v. Baltimore & Ohio R.R., supra.* Accordingly, defendants may not avail themselves of the § 4(f)(2) defense.

**B.** *Defendants' Reliance on DOL Regulations*

■ Defendants further allege that, in retiring plaintiff, they relied in good faith upon certain regulations promulgated by the DOL in booklet form, and also codified at 29 C.F.R. § 860.110. *See* Affidavit of Frank J. Borges, sworn to December 20, 1979, ¶¶ 8, 9. Thus, defendants contend that they are entitled to the defense of good faith reliance on current regulations set forth in § 10(a) of the Portal-to-Portal Act, 29 U.S.C. § 259(a), which is incorporated by reference into the ADEA. 29 U.S.C. § 626(e).[5]

The regulation on which Colgate is said to have relied provided:

"(a) ... Thus, the Act authorizes involuntary retirement irrespective of age, provided that *such retirement is pursuant to the terms* of a retirement or pension plan meeting the requirements of Section 4(f)(2).

"The fact that an employer may decide to permit certain employees to continue

---

**5.** 29 U.S.C. § 259(a) provides in pertinent part that:

"[N]o employer shall be subject to any liability ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval or interpretation, of the agency...."

working beyond the age stipulated in the formal retirement program does not, in and of itself, render an otherwise bona fide plan invalid insofar, [sic] as the exception provided in Section 4(f)(2).

"(b) This exception does not apply to the involuntary retirement before 65 of employees who are not participants in the employer's retirement or pension program. . . ." (emphasis added).

Because, as explained in Part II(A) *supra*, the terms of the Colgate Plan make no provision for involuntary retirement, the regulation at issue can in no way serve as a basis for defendants' position. *Cf. Sexton, supra*, 630 F.2d at 486 (Court relies on cited regulation to support finding that § 4(f)(2) defense depends on express, specified provision in plan).

### III.

### TIMELINESS

A cause of action alleging discrimination in violation of the ADEA must be commenced within two years of the act of discrimination or, if the act complained of is a willful violation, within three years of the date of the challenged conduct. 29 U.S.C. § 626(e) (incorporating statute of limitations contained in Portal-to-Portal Pay Act, 29 U.S.C. § 255). In the case at bar, defendants argue that their conduct was not willful and that the two-year period should apply.

▆ The question of willfulness necessarily implicates questions of the mental state of the defendants, their knowledge, their intent, and their belief in the propriety of their acts. This is so whether a defendant's mere suspicion that his actions were governed by the ADEA provides a sufficient basis for a finding that his acts were willful, as the Fifth Circuit held in *Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974) and in *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir. 1971), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972), or whether something more than negligence, such as premeditation or a formed intention, is required. *See* cases cited in defendants' Main Brief at 52–54. In either case,

the defendants' state of mind must be determined after careful evaluation of all the facts, and thus does not present a question appropriate for summary judgment.

▆ The presence of an issue of fact, however, is not, in and of itself, sufficient to defeat a motion for summary judgment; the disputed issue must also be material. The complaint in the instant action was filed on February 28, 1979. The question of defendants' willfulness, therefore, would be material only if the cause of action accrued on or before February 27, 1977—more than two years before the complaint was filed. Defendants urge that this is the situation herein, and that, in fact, the most recent act of alleged discrimination occurred on January 1, 1977. Defendants characterize that day as both the date plaintiff voluntarily ceased rendering services to Colgate and the date that plaintiff had notice of every action upon which he bases the instant allegation of age discrimination. If defendants' position is correct, the presence or absence of willfulness on the part of defendants would be determinative of plaintiff's right to relief. If, however, the cause of action is deemed to have accrued no earlier than March 1, 1977, the date plaintiff's retirement became effective, then this suit would be timely in any event.

In support of their position that January 1 is the operative date, defendants analogize this case to cases which hold that when a claimant is discharged but continues to receive a salary or other benefits, the statute of limitations runs from the last day of actual service to the employer and not the day that the salary or benefits cease. *E.g., Bonham v. Dresser Indus., Inc.*, 569 F.2d 187 (3d Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Davis v. RJR Foods, Inc.*, 420 F.Supp. 930 (S.D.N.Y. 1976), *aff'd without opinion*, 556 F.2d 555 (2d Cir. 1977). *Compare Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (where "essential allegation" of complaint is denial of tenure, cause of action accrues at time decision is made and communicated to plaintiff, not

when he is actually terminated one year later). But defendants overlook the fact that, in the case at bar, a constructive discharge case, no notice of termination on a date certain was given to plaintiff, a factor present in the actual discharge cases relied on by defendants. Rather, it is conceded by defendants that at all pertinent times, plaintiff was given a choice whether to continue as a Colgate employee, albeit as a salesperson, or to retire. The only limitation on that freedom was that plaintiff make known his decision by February 28, 1977, because after that date Colgate would no longer continue him on its payroll unless he accepted his demotion. Moreover, the exhibits indicate that the proposed effective date of plaintiff's 1976 demotion was actually extended by Colgate from early January until plaintiff was able to evaluate fully his options, and defendants further concede that the 1976 demotion never took effect because plaintiff opted for retirement. Under these circumstances, plaintiff's right to seek relief cannot be said to have been complete until plaintiff exercised his choice, because until then, the "essential allegation" of his complaint—discriminatory demotion or discriminatory constructive discharge—did not become clear. *Cf. Jackson v. Alcan Sheet and Plate*, 462 F.Supp. 82 (N.D.N.Y.1978) (employee notified of termination but given option of changing jobs ceased work on date specified by employer for termination, and thereafter notified employer he would not exercise option, held, cause of action accrued on date plaintiff stopped working).

The foregoing analysis does not mean that plaintiff's cause of action could have accrued only on or after March 1, 1977, the date of his formal retirement. The trier of fact may ultimately determine that a constructive discharge, if one occurred at all, took place on or about January 1, 1977, when plaintiff stopped going to work; that it was on that date that "a reasonable person in the employee's position would have felt compelled to resign," *Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 305 (5th

Cir. 1981), and that it was on that date that plaintiff in fact resigned, notwithstanding his continued receipt of employee benefits. What is clear from the foregoing analysis is that, particularly in light of defendants' own view that plaintiff remained an active employee of Colgate until February 28, 1977,[6] and because this is not a straightforward termination case, these are questions better left to the trier of fact.

Although the claims arising from plaintiff's retirement may be timely, the same cannot be said of the claims arising out of plaintiff's demotion from District Manager to Area Manager in 1972. Plaintiff asserts that those claims are timely as to all defendants because the violation was not an isolated one, but rather continued until plaintiff finally retired in 1977. This position, however, has consistently been rejected for the reason that while employees who have been demoted continue to feel the effects of that demotion in terms of reduced salary and benefits, as plaintiff alleges is the situation at bar, "the critical question is whether any present *violation* exists." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (emphasis in original); *accord, Ricks, supra*, 449 U.S. at 257–58, 101 S.Ct. at 504 ("[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination"). No such present *violation* is alleged in the complaint, which states the three acts allegedly constituting discrimination—the 1972 demotion, the 1976 demotion, and plaintiff's retirement—separately and without any attempt at connecting them. Moreover, the requisite present *violation* is not found in the reference contained in the December 1975 appraisal of plaintiff in which plaintiff is characterized as "nonpromotable due to age." Assuming that that statement means what it says, a refusal to promote due to age more than three years after a demotion does not revive the earlier claim. *See, e.g., Downey, supra*, 649 F.2d at 305–05; *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014 (1st Cir. 1979), *cert. denied,*

---

**6.** Affidavit of Frank Borges, sworn to December 20, 1980, at ¶ 6.

445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980); *Marshall v. American Motors Corp.,* 475 F.Supp. 875 (E.D.Mich.1979) ("although some effects may still exist as the result of discriminatory discharges or demotions, if there is a reasonable ascertainable date on which the act occurred, that is the day on which the statute began to run"). *See generally Milton v. Weinberger,* 645 F.2d 1070, 1075 (D.C.Cir.1981). Any other result would run afoul of the purpose of the limitations period as enunciated by the Supreme Court in *Ricks, supra,* 449 U.S. at 256–57, 101 S.Ct. at 503–04:

> "The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past."

■ While I conclude that those claims arising out of the demotion of plaintiff in 1972 are time-barred, the prior acts "may constitute relevant and probative background evidence." *See Evans, supra,* 431 U.S. at 558, 97 S.Ct. at 1889. These actions will, therefore, be allowed as evidence on the questions whether plaintiff was constructively discharged and whether age was a factor. Although the evidence admittedly concerns time-barred conduct, " 'it is relevant, ... and may be used ... to illuminate current practices which, viewed in isolation, may not indicate discriminatory motives.' " *Downey, supra,* 649 F.2d at 305, *quoting Crawford v. Western Electric Co.,* 614 F.2d 1300, 1314 (5th Cir. 1980).

## IV.

### COMPENSATORY DAMAGES

In his complaint, plaintiff states that he has been deprived of salary and fringe benefits (¶ 19), that he has incurred additional expenses (*id.*), and that he has suffered physical and mental pain and anguish (¶ 20). He further alleges that he has suffered damages totalling $750,000 (¶ 21), that he is entitled to liquidated damages in the same amount (¶ 22),[7] and that he is entitled to be reinstated or awarded an amount equal to what he would earn if reinstated (¶ 23).

■ The complaint does not specify how the damage figure quoted in ¶ 21 is to be allocated between lost minimum wages and lost benefits on the one hand, and compensation for pain and suffering and the like on the other. It is clear for the reasons stated by Judge Motley in *Ayres v. Federated Department Stores, Inc.,* 24 Fair Empl. Prac.Cas. 528 (S.D.N.Y.1980) that damages of the latter sort are not authorized under the ADEA. *Accord, Naton v. The Bank of California,* 649 F.2d 691 (9th Cir. 1981); *Slatin v. Stanford Research Inst.,* 590 F.2d 1292 (4th Cir. 1979); *Vazquez v. Eastern Air Lines, Inc.,* 579 F.2d 107 (1st Cir. 1978); *Dean v. American Security Ins. Co.,* 559 F.2d 1036 (5th Cir. 1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3d Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). Accordingly, defendants' motion for summary judgment dismissing plaintiff's prayer for compensatory damages other than those for unpaid salary and benefits is granted.[8]

## V.

### JURISDICTION OVER THE INDIVIDUAL DEFENDANTS

■ When he filed his notice of intent to sue with the DOL, plaintiff never named any of the individual defendants, either as

---

**7.** As defendants concede at p. 65 of their Main Brief, their motion to strike plaintiff's claim for liquidated damages must be denied in light of the Court's holding that plaintiff's retirement does not fall within the § 4(f)(2) exemption

**8.** Plaintiff, noting that the Second Circuit has yet to rule on the issue of compensatory damages, and recognizing that there is a split of authority among district courts, *see, e.g., Pavlo*

*v. Stiefel Laboratories, Inc.,* 22 Fair Empl.Prac. Cas. 489 (S.D.N.Y.1979) (Broderick, J.), has asked the Court to withhold decision pending trial. I decline to do so, preferring to make my own evaluation of the issue at this time. Plaintiff may, of course, at any time bring to the Court's attention a Second Circuit decision holding to the contrary.

corporate employees of Colgate or individually. Although the general rule is that a party not named in the notice of intent to sue cannot be named as a defendant in a subsequent suit, see 29 U.S.C. § 626(d); *Silver v. Mohasco,* 602 F.2d 1083, 1086 (2d Cir. 1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Travers v. Corning Glass Works,* 76 F.R.D. 431 (S.D.N.Y.1977), an exception is made if "there was 'substantial identity' between those named in the [administrative] charge and these defendants and [if] these defendants had notice of the [administrative] proceeding," *Vulcan Soc. v. Fire Dep't,* 82 F.R.D. 379, 389 (S.D.N.Y.1979) (citations omitted) (Title VII case). Stated somewhat differently, if notice of intent to sue is given to their corporate employer, but not to them, the individual defendants may nevertheless be included in the complaint if they had actual notice that their individual conduct was being investigated. *Travers, supra; Quinn v. Bowmar Publishing Co.,* 445 F.Supp. 780, 785 (D.Md.1978).

▮ Notwithstanding plaintiff's professed need for further discovery to determine whether any of the individual defendants had notice of the conciliation efforts, it is clear that this case fits well within the rule rather than the exception. Each individual defendant has sworn that he personally never received any notice that he was named in a notice of intent to sue, and has further averred that he neither was involved in nor received notice of a DOL investigation or conciliation efforts undertaken by any agency, state or federal. Affidavit of Joseph Maday, sworn to February 29, 1980 at ¶ 2; Affidavit of James Flood, sworn to March 3, 1980 at ¶ 2; Affidavit of William Kneebone, sworn to February 29, 1980 at ¶ 2; Affidavit of Ralph Champlin, sworn to March 3, 1980, at ¶ 2. In addition, the uncontroverted documentary evidence—documents prepared by the DOL itself—unequivocally corroborates those sworn statements. In the DOL's letter to plaintiff notifying him of his right to sue, Exhibit 7 to Allen Affidavit, plaintiff was informed:

"Recently you gave the Secretary of Labor notice of your intent to sue Colgate-Palmolive Company.... The *firm* was advised of the notification.... Our efforts by way of informal conferences to persuade the *firm* to re-employ [plaintiff] were unproductive." (emphasis added).

Similarly, the DOL's written narrative of the conciliation efforts, Exhibit A to Affidavit of Susan Savitt, sworn to March 4, 1980, establishes that the individual defendants were in no way involved. After heading the page with Colgate's name, the narrative states:

"Notification of intent to sue the *above named firm* ... was received....

"After notifying the *prospective defendant* of the impending law suit ... the following action was taken...:

"1. In a meeting with Thomas Galligan, associate counsel, J. Herbert Wise, Director, Human Resources Development and Frank Borges, Director, Compensation Benefits & Administration, painstaking affirmative efforts were made to resolve the alleged grievance by informal methods of conciliation, conference and persuasion as the Act requires.

"The *spokesman for the firm* pointed out that Allen was not terminated.

\* \* \* \* \* \*

"3. ... These comments from prospective plaintiff's attorney were presented to the *spokesmen* for their consideration.

\* \* \* \* \* \*

"This offer [of settlement] was made known to *defendant's* counsel ... [H]e is prepared to defend *the firm* in a court action." (emphasis added).

It is clear from the foregoing that the individual defendants never had an opportunity to conciliate plaintiff's grievances, and that this was because of plaintiff's failure to name them in the notice of intent to sue. Plaintiff suggests no additional facts that could be obtained through further discovery that would cast doubt on this conclusion, nor, given the plain import of the two DOL documents quoted above, could he. Thus, I am compelled to conclude that the

Court lacks subject matter jurisdiction over the allegations of the complaint asserted against the individual defendants. The motion for summary judgment dismissing the complaint as against them is therefore granted.[9]

## VI.

The final matter for resolution is plaintiff's cross-motion pursuant to F.R.Civ.P. 37 for an order compelling inspection of documents in accordance with plaintiff's First Request for Production of Documents dated October 3, 1979. At issue is plaintiff's demand for all appraisal reports and other personnel records concerning 57 of Colgate's former and present employees specified by name ("Item 1"), and plaintiff's demand for all documents requested at an earlier deposition of James Flood not heretofore produced.

Plaintiff describes the purpose behind his demand for Item 1 as two-fold: "(1) to determine whether a pattern and practice of discrimination on the basis of age has occurred at Colgate, and (2) to determine whether preferential treatment was given to any younger Colgate employee at plaintiff's expense in violation of the ADEA." Defendants do not dispute that plaintiff is entitled to develop statistical evidence, nor could they given the rule that statistical evidence may, without more, be sufficient to establish a *prima facie* case of discrimination. *See The Guardians Ass'n v. Civil Service Comm'n*, 633 F.2d 232 (2d Cir. 1980), *cert. denied*, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981), *aff'g on this ground*, 431 F.Supp. 526 (S.D.N.Y.1977); *Kephart v. Institute of Gas Technology*, 630 F.2d 1217 (7th Cir. 1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). Defendants claim, however, that the request is unduly burdensome; is designed to help plaintiff recruit "opt-in" plaintiffs; would invade the privacy of the 57 individuals named; and is not "relevant to the subject matter involved in the pend-

ing action," *see* F.R.Civ.P. 26(b)(1), with respect to those of the 57 who fall into one of the following categories:

(1) employees who were or are salespersons, never having held either the position of Area Manager or that of District Manager, because treatment of them would have no bearing on the treatment of someone in a different job classification;

(2) employees who never worked in the New York District, because, at the time of each reclassification, plaintiff was compared only with other New York District employees.

In addition, defendants contend that if the cross-motion is not denied, the Court should limit production to those papers prepared in or after September 1974, which is some two years prior to the time plaintiff was notified of his demotion to salesperson.

While the stated purposes behind Item 1 appear to be bona fide, I must weigh plaintiff's need for the files against the very real concerns expressed by defendants. Plaintiff has not shown why the files of all of the named individuals are necessary, nor, aside from the averred fact that plaintiff "personally knew or knew of" each individual, Allen Affidavit at ¶ 17, has he demonstrated the relevance of each particular individual named. Relevance is self-evident with respect to persons similarly situated to plaintiff, but with respect to the remaining persons, a balancing of interests requires that plaintiff make a greater showing of relevance and need before Colgate is required to produce all of the files requested. Accordingly, plaintiff's cross-motion is granted with respect to Item 1, under the following conditions:

(1) Colgate need only produce the files of those named persons who were employed in the Northeast Region and who at some time held the position of Area Manager or District Manager;

(2) Within that group, Colgate need only produce that portion of the files prepared on or after January 1, 1970;

**9.** Having determined that the Court lacks subject matter jurisdiction over the individual defendants because of plaintiff's failure to name them in the notice of intent to sue, I need not address the additional contention set forth by defendant Champlin.

(3) All parties and their counsel must abide by the terms of the Stipulation of Confidentiality entered into by counsel in July 17, 1979; and

(4) This Order is without prejudice to plaintiff's renewal of his motion to compel with respect to the remaining files, upon a proper showing of need and relevance, if he deems it necessary, after he has reviewed the documents produced pursuant to this Order.

■■■ With respect to Item 2, there appears to be only one outstanding request: "any analysis reports written by defendant Flood for employee Bill Leach or others containing his phrase 'nonpromotable due to age.'" The circumstances surrounding the request are as follows. That same phrase, obviously an important part of plaintiff's case, was used by Flood when he prepared plaintiff's 1975 evaluation report. In his deposition, Flood attempted to explain his use of the phrase by describing it as a means of protecting plaintiff. Flood further stated that he used the same phrase in evaluations of others, including an employee named Bill Leach.

Defendants' assertion that the sought-after information is irrelevant because Mr. Leach voluntarily retired at age 65 from the position of salesperson, never having reached a higher position, is frivolous. This information is clearly relevant to a number of issues in the case: whether age was a factor in the treatment of plaintiff; whether defendants acted willfully; and what Flood meant when he used the term. Accordingly, Colgate is directed hereby to produce any and all appraisals written by Flood that contain the quoted phrase.

## CONCLUSION

To summarize briefly the Court's rulings:

(1) Defendants' motion for summary judgment on the basis of the § 4(f)(2) defense is denied. The Court holds that, as a matter of law, there were no terms in the Colgate Retirement Plan which defendants could be said to have observed. Accordingly, defendants will be precluded from asserting the defense at trial. Moreover, there being no "substantial ground for difference of opinion" on this particular point, defendants' application for permission to proceed with an interlocutory appeal is denied. *See* 28 U.S.C. § 1292(b).

(2) There being genuine issues of material fact concerning when plaintiff's cause of action accrued and whether defendants' acts were willful, defendants' motion for summary judgment on the ground that the complaint is time-barred is denied.

(3) Summary judgment in defendants' favor, striking plaintiff's claim for compensatory damages other than those for unpaid wages and lost benefits, is granted. Defendants' motion for an order striking the claim for liquidated damages is denied as moot.

(4) Summary judgment in favor of the individual defendants, dismissing the complaint as against them only for lack of subject matter jurisdiction, is hereby granted. The action will proceed against defendant Colgate only.

■■■ I am further of the opinion that the judgment dismissing the complaint as against the individual defendants should be certified as a final judgment under Rule 54(b). This will make possible an appeal, at this time, of the Court's ruling that plaintiff's failure to name the individual defendants in his notice of intent to sue deprives the Court of jurisdiction to hear his complaint against them. In exercising my discretion to issue a Rule 54(b) certification, I consider that the proof that would be required at trial to prevail against defendant Colgate would be substantially the same as that required to prevail against the individual defendants as to whom the complaint is dismissed prior to reaching the merits. While as stated *ante* I do not accept plaintiff's position on this issue, it is in my judgment appropriate, in the interests of judicial economy, that plaintiff be able to test the jurisdictional prerequisites prior to proceeding on the merits as against the remaining defendant. Accordingly, the Court having determined that there is no just reason for delay, the Clerk of the Court

is hereby directed pursuant to F.R.Civ.P. 54(b) to enter judgment in favor of defendants Flood, Kneebone, Maday, and Champlin, dismissing plaintiff's complaint against them.

(5) Plaintiff's cross-motion for an order compelling discovery is granted to the extent stated in Part VI *supra.* The case is referred hereby to the Hon. Harold J. Raby, United States Magistrate, to supervise all remaining pretrial discovery and otherwise expedite preparation of this case for trial.

It is So Ordered.