**Richard RUSSO, Plaintiff,**

v.

**TRIFARI, KRUSSMAN & FISHEL, INC., Defendant.**

**No. 85 Civ. 9939 (GLG).**

United States District Court, S.D. New York.

May 5, 1987.

Robert N. Marx, New York City, for plaintiff.

Patterson, Belknap, Webb & Tyler, New York City by Harman Avery Grossman, and M. Theresa Hupp, Kansas City, Mo., for defendant.

GOETTEL, District Judge.

Plaintiff Richard Russo is a former employee of defendant Trifari, Krussman & Fishel, Inc. ("Trifari"), a manufacturer of costume jewelry. Russo worked for Trifari for twenty-one years, from 1962 through 1983, as a model maker[1] in Trifari's New York City offices.

In 1982, Trifari reorganized its operation and relocated most of its premanufacturing functions, including design and model making, to its plant in East Providence, Rhode Island, purportedly to end the costly process of shipping items back and forth between the designers and model makers in New York City, and the manufacturing plant in East Providence. However, because fashion trends are set in New York, Trifari kept some fashion line designers in New York. After studying work flow, Trifari also decided to keep two model makers in New York to work with its New York designers.[2]

On November 1, 1983, Trifari told Russo and five other New York employees that, because of the company's reorganization, they would have to transfer to East Providence or lose their jobs, effective January 1, 1984. On November 10, 1983, letters were sent to these employees explaining that transferring would not affect company benefits, and that Trifari would pay moving and "house hunting" expenses. The letter also outlined the terms of a severance package, including twelve weeks of severance pay, for those employees who declined the transfer. Another letter, dated November 22, 1983, provided additional information about the benefits Trifari would provide to employees who chose to transfer, and noted that affected employees had to decide by December 1st whether to accept the transfer. All six employees elected not to transfer, and all were terminated effective January 1, 1984. Four were model makers, ages 49, 58, 60, and 67, Russo being the oldest; two were designers, ages 23 and 30. The two model makers allowed to remain in New York were 51 and 52 years old.

On January 17, 1984, Russo filed a complaint against Trifari with the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination. He stated that he was the oldest employee in the model making department, and had been forced to transfer to East Providence or be terminated because of his age. Russo claimed that younger employees with less seniority were allowed to keep their jobs in New York. Russo also alleged that his transfer was not necessitated by business. On May 29, 1984, the EEOC advised

---

1. A model maker constructs three dimensional samples from a designer's sketch or verbal description of a piece of jewelry.

2. Trifari also uses free lance fashion designers in New York. Since they are not employees, they could not be transferred to East Providence. The two model makers selected to remain in New York would also assist these free lance designers.

Russo that it had been unable to resolve his age discrimination claim and would take no further action; he was, however, free to institute legal proceedings.

On August 6, 1984, Russo submitted another complaint to the EEOC, in which he alleged that Trifari had discriminated against him on the basis of his national origin. Russo charged that, because he was Italian, he had been subjected to ethnic slurs, and had been forced to transfer to East Providence or lose his job. Russo also claimed that Trifari denied him a wage increase because of his nationality. On August 14, 1984, Russo amended this EEOC complaint to state that Trifari had allowed another model maker of Italian origin, but with less seniority, to keep his job in New York. On August 16, 1984, the EEOC forwarded Russo's complaint to the New York State Division of Human Rights ("NYSDHR") for investigation.

On January 31, 1985, the NYSDHR issued its findings. The report noted that Trifari employed many Italians in Russo's department, and found no probable cause to believe that Trifari had discriminated against Russo on this basis. On September 24, 1985, the EEOC issued Russo a Right to Sue Letter, based upon the NYSDHR determination.

Russo initiated this suit by filing a *pro se* complaint on December 20, 1985.[3] Thereafter, Russo secured counsel and, in March 1986, filed an amended complaint. The amended complaint alleges a violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (1982) ("ADEA"), on the grounds that Trifari discriminated against Russo on the basis of his age by forcing him into retirement.[4] The amended complaint does not allege discrimination based upon national origin,[5] but adds a claim of retaliatory discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3 (1982),[6] and asserts a pendent state claim for breach of contract. Defendant Trifari moves to dismiss Russo's claims, or, alternatively, for summary judgment. For the reasons stated below, defendant's motion to dismiss is granted.

## A. First Cause of Action—Retaliation Claim

The amended complaint asserts that, in 1979, the plaintiff was insulted by disparaging remarks made about Italians by his supervisor at Trifari, Heinz Martens.[7] The plaintiff purportedly complained to Martens and to higher management about this behavior. He now contends that Martens thereafter retaliated against him by denying him wage increases and promotions, and by recommending that other employees stay in New York while Russo be transferred to East Providence.

The defendant argues that this claim should be dismissed because it was not

---

3. The parties initially disagreed about the filing date of the *pro se* complaint. Russo claimed he filed his complaint on September 20, 1985, and served the summons, by mail, on the same day. It clearly was impossible for the plaintiff to have filed his complaint on September 20, since he annexes the EEOC Right to Sue Letter, dated September *24*, which he states he received on September 28, 1985. In any event, the plaintiff's counsel stipulated at oral argument to the filing date of December 20, 1985, as docketed by the Clerk of the Court.

4. The ADEA states, in pertinent part, "It shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a) (1982).

5. Plaintiff's counsel conceded at oral argument that Russo's claim of discrimination on the basis of national origin has been abandoned.

6. Section 2000e–3 forbids an employer from "discriminat[ing] against any of his employees ... because [that employee] has opposed any practice made an unlawful employment practice by this subchapter...." 42 U.S.C. § 2000e–3(a) (1982). Section 2000e–2 makes it unlawful for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(2) (1982).

7. Russo's EEOC complaint refers to Heinz Martens as "Martin Heintz." However, we assume the plaintiff is referring to the same individual.

specifically raised in Russo's EEOC complaint. Russo's EEOC charge of discrimination based on national origin alleges only that various detrimental employment actions were taken against him because he is Italian. This alone does not raise an inference of retaliatory discrimination. Nothing in the EEOC complaint suggests that Russo protested the purported ethnic slurs or other discriminatory actions allegedly based upon his national origin, or that he was subjected to further discrimination in retaliation for any such protests.

■ In some instances, a court may consider a claim that was not specifically raised in an EEOC complaint. However, this requires that the new allegation is sufficiently like or related to the EEOC claim that it would have been considered during the EEOC investigation. *See Smith v. American President Lines, Ltd.,* 571 F.2d 102, 107 n. 10 (2d Cir.1978); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970). No evidence has been presented to support an inference that the EEOC considered a claim of retaliation along with Russo's claim of national origin discrimination. If anything, the documents submitted on this motion, including the EEOC's official findings and file memoranda, support just the opposite conclusion.

■ Moreover, to state a cause of action for retaliatory discrimination, the plaintiff must show that (1) he engaged in a protected activity, (2) the employer was aware of this, and (3) the employer thereafter took some adverse action against him because of his participation in a protected activity. *See Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir.1980). Although the plaintiff alleges in this suit that he complained about the derogatory ethnic remarks being made about Italians and that this was the cause of the adverse actions taken against him, he cites no precedent for the proposition that his complaint to management rises to the level of a

protected activity within the meaning of Title VII. Thus, even if the EEOC investigation had encompassed a retaliation claim, the plaintiff has failed to state a prima facie case in this suit. Accordingly, we find that the plaintiff's claim of retaliatory discrimination must be dismissed.

## B. Second Cause of Action—ADEA Claim

Trifari contends that the plaintiff's age discrimination claim arose on November 1, 1983, the date Russo was notified of his option to transfer or be terminated, so that this claim was untimely when filed on December 20, 1985. The applicable statute of limitations for the plaintiff's ADEA claim is two years from the date the cause of action accrued; three years if the alleged violation was "willful." 29 U.S.C. § 255(a) (1982). Russo asserts that his cause of action only accrued on December 31, 1983, the last date on which he was employed. Alternatively, he contends that the defendant's acts were willful, thus extending the limitations period to three years. We first consider whether the three-year period is applicable since, if it is, the plaintiff's ADEA claim is timely whether it accrued on November 1, 1983, or thereafter.

■ The statute provides no definition of "willfulness," and the federal courts disagree on how it should be interpreted in determining the statute of limitations in ADEA actions. *See Transworld Airlines, Inc. v. Thurston,* 469 U.S. 111, 127–28, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985). However, even viewing the allegations of the complaint in the light most favorable to the plaintiff, they fail to state a claim for willful violation of the ADEA under any interpretation of the willfulness standard. The plaintiff's allegations of willfulness are conclusory at best, with no mention that the defendant was even aware that the ADEA was "in the picture." [8] According-

8. Some courts have held that, for purposes of determining the statute of limitations in an ADEA claim, a violation is willful if the employer knew that the ADEA was "in the picture." *Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139, 1142 (5th Cir.1971), *cert. denied,* 409 U.S. 948,

93 S.Ct. 292, 34 L.Ed.2d 219 (1972); *see EEOC v. Central Kansas Medical Center,* 705 F.2d 1270, 1274 (10th Cir.1983). Neither the Second Circuit nor the Supreme Court has ruled on this question. In considering willfulness for purposes of liquidated damages in an ADEA case,

ly, the two-year limitations period is applicable. To survive the defendant's motion to dismiss, the plaintiff's age discrimination claim must have accrued on or after December 20, 1983.

■ The plaintiff states that his cause of action accrued on December 31, 1983. He argues that, because he was forced to choose between accepting a transfer or losing his job, his cause of action did not accrue until he exercised his choice.[9] *See Allen v. Colgate-Palmolive Co.,* 539 F.Supp. 57 (S.D.N.Y.1981);[10] *Jackson v. Alcan Sheet & Plate,* 462 F.Supp. 82 (N.D. N.Y.1978). He also alleges that he attempted to get Trifari to change its mind about requiring him to transfer, so that he couldn't know until December 31, 1983, whether the defendant would adhere to its initial decision. In light of Supreme Court precedent almost squarely on point, we reject the plaintiff's arguments.

In *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Supreme Court stated that "limitations periods normally commence when the employer's decision is made." *Id.* at 261, 101 S.Ct. at 506. *Accord Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981); *Gilliard v. New York*

*Public Library System,* 597 F.Supp. 1069, 1076 (S.D.N.Y.1984). In *Ricks,* a teacher was denied tenure, offered an additional year of employment under a "terminal" contract, and advised that he could challenge the employer's decision in a grievance proceeding, which he did. The grievance was subsequently denied. When the case was considered by the Supreme Court, Ricks, like Russo, argued that the statute of limitations ran from the last day of his employment. The EEOC, which filed an amicus brief, argued that if the Court failed to accept the last date of employment as the date on which Ricks's cause of action accrued, alternatively, it should accept the date the grievance was denied, since until then the tenure decision could have been changed. The Supreme Court rejected both alternatives, noting that the denial of Ricks's tenure was definite, not tentative, when he was first notified; the grievance could merely provide a remedy for the earlier decision, not influence it. *Ricks, supra,* 449 U.S. at 261, 101 S.Ct. at 506. Thus, the date on which he was notified of the employer's decision was the date on which his cause of action accrued. If the Supreme Court would not toll the statute of limitations pending the determina-

---

the Second Circuit has held that the proper standard is whether "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Air Line Pilots Association v. Trans World Airlines, Inc.,* 713 F.2d 940, 956 (2d Cir. 1983), *aff'd in part & rev'd in part on other grounds sub nom. Transworld Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). On appeal, the Supreme Court noted, without resolving, the division among the circuits on whether the willfulness standard should be the same for determining liquidated damages and for statute of limitations purposes. *Transworld Airlines, Inc. v. Thurston, supra,* 469 U.S. at 128 n. 21, 105 S.Ct. at 625.

9. The plaintiff does not state when he made his choice, but stresses that he could have changed his mind any time until his last day of employment, December 31, 1983.

10. We find plaintiff's reliance on *Allen* misplaced. There, the employee, at age 60, was notified that he would have to accept a demotion effective three months hence. Prior to that date, he began discussing early retirement. Shortly before the demotion was to become effective, the employee took some vacation

days, and then allegedly became ill. He did not return to work for several months, but continued receiving his regular salary. Finally, the employer gave him the choice of returning to work in the demoted position (at the same salary), taking unpaid leave time, or taking early retirement. The employee chose early retirement, but later alleged he had been discriminatorily forced to retire. On a motion to dismiss or for summary judgment, the employer argued that Allen's cause of action had accrued on the date his demotion was to become effective. However, unlike the case at bar, Allen had not initially been offered a choice between demotion or early retirement. He was only advised that a demotion would occur on a specified date, and even that date was extended. On those facts, the district court was unwilling to rule that Allen's cause of action accrued on the initial date set for his demotion. Here, however, when Russo was advised in November 1983 that he would have to choose between transfer or termination, either choice to be effective January 1, 1984, he had full notice of the action upon which he bases his allegations herein of age discrimination.

tion of an official grievance, we can hardly countenance such an extension for Russo's informal negotiation with his employer.

We note, moreover, that the plaintiff's ADEA claim stresses that Trifari forced him to choose between transfer and termination, and denied him the opportunity to continue working in New York. Thus, the alleged discriminatory act was *asking him to choose* between transfer and termination.[11] Russo was advised of his options on November 1, 1983. Later that month, he was given additional information about the benefits that accompanied either choice. Accordingly, we find that the plaintiff's ADEA cause of action accrued in November 1983.[12]

■ The amended complaint asserts one claim that accrued after November 1983. However, this does not save Russo's cause of action for age discrimination. The

11. Russo repeatedly asserts his claim in terms of being forced to transfer or be terminated. This includes his charge of discrimination filed with the EEOC.

12. We need not decide whether the claim accrued on November 1, or later in November, since the plaintiff's cause of action would be time-barred in either case. We also find the plaintiff's ADEA claim time-barred in light of a declaration in his own EEOC complaint. Russo's EEOC age discrimination charge asserts that the most recent act of age discrimination occurred on December 19, 1983. Therefore, his filing of this action on December 20, 1985, was untimely.

13. The plaintiff claims that under the defendant's "lay off" policy, he should have been offered the New York job in October 1984. However, Russo and the other model makers who chose not to transfer were terminated, as compared with a "lay off" in contemplation of a temporary work shortage. They all elected to give up their jobs rather than transfer to East Providence and were all given substantial severance benefits. This does not fall within the ambit of seniority rules for rehiring laid off employees.

14. Had we not reached this conclusion, we would nevertheless have to grant the defendant's alternative motion for summary judgment. The Supreme Court recently articulated the standard for summary judgment as follows: "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may

plaintiff alleges that, in October 1984, Trifari rehired one of the other terminated model makers to work in New York. Russo asserts that this was an act of age discrimination by the defendant because the employee rehired was younger and had less experience than the plaintiff.[13] This claim, however, was not raised in Russo's EEOC complaint and would not have been included in any investigation of the plaintiff's age discrimination claim. *See supra* pp. 4–5. Under all the above circumstances, we find the plaintiff's age discrimination claim is untimely and grant the defendant's motion to dismiss the second cause of action.[14]

C. Third Cause of Action—Contract Claim

■ Trifari moves to dismiss Russo's state law contract claim for lack of subject

be granted." *Anderson v. Liberty Lobby, Inc.,* — U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Assuming *arguendo* that the plaintiff states a *prima facie* case of age discrimination, *see Pena v. Brattleboro Retreat,* 702 F.2d 322, 324 (2d Cir.1983), the defendant has come forth with a legitimate, nondiscriminatory reason for its acts. The plaintiff must then demonstrate that the reasons articulated by the defendant were a mere pretext for discrimination. *Id.* The plaintiff fails to do so. He implies that Trifari's business reorganization was a sham, really intended to force him out of his job because of his age. The evidence simply doesn't support such an inference. Trifari asked six employees to transfer; they ranged in age from 23 to 67. The three other model makers asked to transfer were between the ages of 40 and 70, the class protected under the ADEA. Furthermore, Trifari offered substantial incentives and assistance to any employee who chose to transfer; it had no way of knowing which of the six employees would accept or decline.

The plaintiff meets this evidence with speculation that the defendant's true motive was discriminatory. The Second Circuit has held that summary judgment is available in discrimination suits even though there may be issues of intent, noting that the summary judgment rule would become sterile if the mere incantation of "intent" operated to defeat an otherwise valid motion. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). We find the evidence here "is so one-sided that [Trifari] must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc., supra,* 106 S.Ct. at 2512.

matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Russo argues, however, that we should grant pendent jurisdiction to the contract claim. Having dismissed the plaintiff's federal claims, we no longer have jurisdiction over this state common law claim, and it is dismissed.[15]

In sum, for the reasons discussed above, we grant the defendant's motion to dismiss the amended complaint in its entirety. The Clerk will enter judgment accordingly.

SO ORDERED.

15. For the sake of completeness, we note that the plaintiff's contract claim arises out of an entirely separate transaction between the parties. Russo alleges that, in 1980, Trifari's design director, Carolyn Yates, asked Russo to work overtime and agreed to pay him additional compensation for work he performed beyond regular working hours. Russo claims the value of the work he performed was $3,422.00, and that Trifari has never paid him this money. The defendant acknowledges that Russo and Carolyn Yates discussed Russo submitting models made on his own time. According to the defendant, they did not discuss payment. Russo presented a model to Yates, along with a bill for $3,422.00, for materials and labor. Yates told him that the model had to be sent to Kansas City for approval by the design committee. The model was rejected. When she returned the model to Russo, Yates offered him $400 "for his trouble." Russo rejected the money. He now claims that he is entitled to damages of $3,422.00, for expenses and labor in producing the model. Russo claims that a common factual core exists between his contract claim and his federal claims because they arose at about the same time. However, it is not reasonable to grant pendent jurisdiction to such an otherwise disparate claim merely because it arose at about the same time as the federal claims.