Richard RUSSO, Plaintiff–Appellant,

v.

TRIFARI, KRUSSMAN & FISHEL, INC., Defendant–Appellee.

No. 257, Docket 87–7517.

United States Court of Appeals, Second Circuit.

Argued Oct. 27, 1987.

Decided Jan. 8, 1988.

Robert N. Marx, New York City, for plaintiff-appellant.

Harman Avery Grossman, New York City (Patterson, Belknap, Webb & Tyler, New York City, M. Theresa Hupp, Kansas City, Mo., of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, and NEWMAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Richard Russo appeals from the dismissal of his action brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1982).

Upon the close of discovery, defendant Trifari, Krussman & Fishel, Inc. ("Trifari") moved for dismissal of Russo's complaint and alternatively for summary judgment. In granting Trifari's motions, Judge Goettel held that the complaint did not allege facts sufficient to state a claim under the ADEA's statute of limitations provision for willful violations, and that the ADEA's two-year statute of limitations for non-willful violations therefore applied. *Russo v. Trifari, Krussman & Fishel, Inc.,* 659 F.Supp. 194, 198–99 (S.D.N.Y.1987). The district court thereafter determined that Russo's action accrued more than two years before the filing of his complaint and was thus time-barred. *Id.* at 199–200. In an extended footnote, the district court held alternatively that Trifari was entitled to summary judgment on the merits of Russo's claim to the extent that it alleged a non-willful violation. *Id.* at 200 n. 14. Because we conclude that Russo's claim would be time-barred if it alleged only a non-willful violation, but that Russo has raised material issues of fact as to a willful violation, we reverse and remand.

## BACKGROUND

We of course view the evidence in the light most favorable to the plaintiff. Trifari manufactures under its own name two lines of costume jewelry, a Basic Line and a Fashion Line. The only difference between the two lines is that Basic Line styles tend to remain the same over time, while Fashion Line styles change approximately every six months. The Basic Line constitutes about seventy percent of the company's business.

Russo worked for Trifari in New York City for twenty-one years as a model-maker, a craftsman who constructs three dimensional samples from a designer's sketch or verbal description of a piece of jewelry. There is no difference between constructing a model for the Basic Line and one for the Fashion Line. In 1982, there were five "staff" model-makers in Trifari's New York model-making department: Russo, age 66 (20 years with the company), Richard Bendi, age 58 (35 years), Frank Tessitore, age 56 (9 years), Sebastian Chiarello, age 49 (3 years), and Rufino Melido, age 47 (1 year). Heinz Martens, age 51 (22 years), was a sixth model-maker but he also had additional responsibilities as a department manager.

Before 1982, Trifari had model-making departments in both New York and East Providence, Rhode Island. Trifari claimed to have decided in 1982 to reorganize its premanufacturing operations. Prior to the beginning of the reorganization, and perhaps in anticipation of it, all employees were required to verify their birthdates, and a chart was prepared listing employees' ages and eligibility for retirement. As part of the reorganization, four New York model-makers and two designers were to be transferred to East Providence in order

to consolidate all premanufacturing operations for the Basic Line. Although it appears that Martens and Chiarello were originally to be included in the transfer, Trifari decided prior to the announcement that they would remain in New York to work on the Fashion Line. At some time before or just after the decision to keep Chiarello in New York, he was appointed to a newly-created position styled "Group Leader." There is a conflict in the evidence over whether this position actually imposed any new duties on Chiarello or was a specious title change justifying keeping him in New York.

On November 1, 1983, the four model-makers—Russo, Bendi, Tessitore and Melido—were informed that they had the option of relocating to East Providence or being terminated effective January 1, 1984. Trifari offered to aid in house-hunting and moving expenses, and to provide transportation to and around East Providence during the transition period. However, an internal company memorandum without an addressee appears to cast doubt on Trifari's sincerity. After stating that the model-makers and designers should be told that all company benefits will remain intact if they accept transfer to East Providence, the document contains the following legible, but lined-out statement: "Model-makers only, do not tell them this." When and how the statement came to be lined-out, or whether its direction was ever followed, is unclear from the record.

Russo testified that during the period in which the employees had to make their decision, Martens said to him, "It's time that you retired." In the end, none of the four model-makers accepted the offer of transfer, and all were terminated. Despite the occurrence of four vacancies, Trifari did not hire a single new model-maker for East Providence until October 1984, ten months after the terminations. In February 1985, Rufino Melido, the youngest of the four previously terminated model-makers, was rehired in New York on a temporary basis, a position made permanent in May 1985. As in the case of Chiarello's promotion, there is some dispute as to the reason for Melido's rehire. According to

Trifari's design director, Melido was re-hired after consultation with Martens because of a "crunch in the model shop." Martens, however, denied that there was any backlog in the model-making shop in 1985 or that he was consulted about the Melido rehire. In July, 1985, a second and apparently final model-maker was also hired in East Providence.

Russo commenced the present action on December 20, 1985, more than two, but less than three, years after being notified that he would have either to move to East Providence or to cease working for Trifari.

## DISCUSSION

After completion of discovery, Trifari moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), or, alternatively, for summary judgment under Fed.R.Civ.P. 56. The district court dismissed plaintiff's ADEA claim as time-barred because the allegations of the complaint "fail[ed] to state a claim for willful violation of the ADEA under any interpretation of the willfulness standard" and were "conclusory at best, with no mention that the defendant was even aware that the ADEA was 'in the picture.'" *Russo*, 659 F.Supp. at 198.

The motion to dismiss was made after discovery. Because materials developed during discovery that were relevant to the willfulness issue were presented to and considered by the district court, the motion to dismiss should have been treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b); *Goldman v. Belden*, 754 F.2d 1059, 1066 (1985). Our review, therefore, will take into account those evidentiary materials.

In addressing the statute of limitations issue, we note first that Mr. Russo's claim accrued on November 1, 1983, when he was informed of Trifari's decision to require him either to move to East Providence or leave its employ. *See Chardon v. Fernandez*, 454 U.S. 6, 7, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (per curiam) (limitations period in § 1983 suit ran from date plaintiffs received termination letters); *Delaware State College v. Ricks*, 449 U.S. 250,

258–59, 101 S.Ct. 498, 504–05, 66 L.Ed.2d 431 (1980) (limitations period in suit under § 1981 and Title VII ran from date of tenure decisions). Section 7(e)(1) of the ADEA, 29 U.S.C. § 626(e)(1) (1982), incorporates Section 6(a) of the Portal-to-Portal Pay Act of 1947, which in turn prescribes a two-year statute of limitations for all actions, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a) (1982). Russo's complaint, filed on December 20, 1985, is thus time-barred insofar as it alleges a non-willful ADEA violation. It is timely, however, if the violation, if any, was willful. Accordingly, we must determine whether a genuine issue of material fact exists as to whether a willful violation occurred.

Because there cannot be willfulness absent a violation of the ADEA, our analysis must begin with the issue of whether Russo made an evidentiary submission sufficient to survive a motion for summary judgment on the issue of age discrimination. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986) (genuine issue of material fact under Rule 56 exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

"The standards relating to burden and order of proof in Title VII cases apply as well to cases arising under the ADEA." *Pena v. Brattleboro Retreat,* 702 F.2d 322, 323 (2d Cir.1983). Under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII case, the initial burden is on the plaintiff to establish a prima facie case of unlawful discrimination. If that burden is met, the burden then shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its action. *Id.* at 802, 93 S.Ct. at 1824. If the defendant meets this burden of production, then the plaintiff, upon whom the ultimate burden of persuasion rests, must show that the proffered reasons were not the defendant's true reasons, but were instead a "pretext for discrimination." *Pena v. Brattleboro Retreat,* 702 F.2d at 324 (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)).

■ To establish a prima facie case of unlawful termination under the ADEA, a plaintiff must show that he belongs to the protected age group, that he was qualified for the position that he held, and that he was discharged under circumstances that give rise to an inference of discrimination. *Id.* at 324.

There is, of course, no dispute that Russo was in the protected class, that he was a qualified model-maker, and that he was terminated after he refused to accept the proffered transfer to East Providence. This leaves only the final element of a prima facie case: whether the termination took place under circumstances that give rise to an inference of discrimination. We believe that Martens' admonition that it was time for Russo to retire, the preparation of the age chart, the disputed circumstances in which Chiarello (age 49) was promoted and avoided transfer, and Melido's (now age 48) rehire, are by themselves sufficiently age-related evidence to cause the burden of production to shift to Trifari.

■ We turn then to Russo's evidence rebutting Trifari's offer of legitimate nondiscriminatory reasons for its actions. While Russo's case is hardly a powerful one, we believe that a trier of fact might find that Trifari's avowed reasons for Russo's transfer were pretextual. The request that employees document their age so that a retirement chart might be prepared, the perhaps specious promotion of Chiarello, the ordering of a transfer when no model-makers were apparently needed in East Providence as evidenced by the failure to hire new model-makers there, the lined-out direction in a memo to withhold from the model-makers information that might make a transfer appealing, the department manager's statement encouraging Russo to retire and the later rehire of the youngest model-maker in New York create a material issue of fact over whether Trifari's "transfer or terminate" order was a ruse to get rid of older workers.

The final issue is whether Russo's claim of willfulness can survive a motion for summary judgment. The term "willful" appears twice in the ADEA, once in Section 7(b), which allows liquidated (double) damages "only in cases of willful violations," 29 U.S.C. § 626(b), and once in the provisions quoted above regarding the statute of limitations. What constitutes a "willful" violation of the ADEA for statute of limitations purposes has not been authoritatively defined. Prior to *Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), most courts gave a single meaning to the term as used in the two sections, although differences arose over what that meaning was. Some courts required a showing of "bad faith evasion" of the ADEA coupled with "definite knowledge [of the statute's] applicability." *Bishop v. Jelleff Assocs.*, 398 F.Supp. 579, 583 (D.D.C.1974). Other courts merely required a finding that the employer's actions in violation of the statute were intentional as opposed to inadvertent or accidental and that the employer knew that the ADEA governed his conduct or was "in the picture." *See, e.g., Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1114 (4th Cir.) (citing *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir.1971), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972)), *cert. denied*, 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981); *see also* Annotation, *What is "Willful" Violation of Age Discrimination in Employment Act (29 U.S.C. §§ 621–634) for Purpose of Extension to 3 Years of 2–Year Limitations Period for Filing Action*, 82 A.L.R.Fed. 377 (1987).

In *Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir.1983), this Court held that in a case under the Fair Labor Standards Act which, like the ADEA, incorporates Section 6(a) of the Portal-to-Portal Act, 29 U.S.C. § 255(a), as its statute of limitations, employers commit a "willful violation" when "(1) they know that their business is subject to FLSA and (2) their practices do not conform to FLSA requirements." We declined in *Carls Drug* to impose an additional requirement that the employer know that he has violated the statute, since such a rule would encourage ignorance of the law. Thus, we said that "neither [an employer's] good faith belief in the lawfulness of his [actions] nor complete ignorance of their invalidity shield[s] the employer from the additional year of liability." *Id.* (quoting *Brennan v. Heard*, 491 F.2d 1, 3 (5th Cir.1974)).

In *Thurston*, the Supreme Court held that an employer's conduct is "willful" for purposes of liquidated damages under Section 7(b) of the ADEA if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Thurston*, 469 U.S. at 128, 105 S.Ct. at 626 (quoting *Air Line Pilots Ass'n, Int'l v. Trans World Airlines, Inc.*, 713 F.2d 940, 956 (2d Cir.1983), *rev'd in part on other grounds*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). The Court left open the question, however, of whether "willful" has the same meaning for statute of limitations purposes, *see id.* 469 U.S. at 127–28 & n. 21, 105 S.Ct. at 625–26 & n. 21, and lower courts have split over this question. *Compare Slenkamp v. Borough of Brentwood*, 603 F.Supp. 1298, 1301–02 (W.D.Pa.1985) (*Thurston* standard applies to both liquidated damage and statute of limitations questions), *aff'd without opinion*, 826 F.2d 1057 (3d Cir.1987) *with EEOC v. Governor Mifflin School Dist.*, 623 F.Supp. 734, 738 (E.D.Pa.1985) (lesser standard of "willfulness" applied to statute of limitations questions).

We were recently asked to resolve this issue in *Brock v. Wilamowsky*, 833 F.2d 11 (2d Cir. 1987). In that FLSA case, the employer argued that the *Thurston* "reckless disregard" standard, applicable to liquidated damages under the ADEA, also applies to the limitations issue under 29 U.S.C. § 255(a), and that *Carls Drug* is no longer valid in light of *Thurston*. We declined to decide whether to overrule our earlier *Carls Drug* holding because the record permitted us to affirm the judgment of the district court in favor of the plaintiff even if the *Thurston* standard applies to the limitations issue. In the present case, we could similarly determine only whether the judgment (in this case in favor of the

defendant) was proper even if the *Thurston* standard applies to the limitations issue. However, since, as the ensuing discussion will show, we conclude that summary judgment was improper even under the *Thurston* standard and a trial is necessary, it is important that we give guidance to the district court as to what willfulness standard applies to the fact-finding that must be done to resolve the limitations issue at trial. We must therefore confront the question of whether a "willful violation" of the ADEA for statute of limitations purposes should be determined with reference to *Carls Drug,* to *Thurston,* or to some other standard. *See generally Wilamowsky,* at 17–19.

We believe that willfulness should have a single meaning within the ADEA and that, therefore, the *Thurston* definition applies. Construing identical language in a single statute in pari materia is both traditional and logical. Moreover, a single meaning avoids potential jury confusion resulting from different instructions concerning the same word. Finally, the observation in *Thurston* that an "in the picture" standard would lead to a finding of willfulness in virtually every case in view of notice posting requirements, *see* 29 U.S.C. § 627 (1982), applies to statute of limitations issues as well as to liquidated damages. *Thurston,* 469 U.S. at 128, 105 S.Ct. at 625.

Treating Trifari's motion to dismiss as a motion for summary judgment under Rule 56, the question is whether, considering all of the evidence in a light most favorable to the plaintiff, a rational trier of fact could find that Trifari engaged in age discrimination and knew or showed reckless disregard for whether its conduct violated the ADEA. We believe that Russo's showing is sufficient to submit to a trier of fact. In particular, the ordering of a transfer when no model-makers were apparently needed in East Providence, the lined-out memo concerning the model-makers and the claimed specious promotion of Chiarello that exempted him from the transfer order might be thought by a trier of fact to demonstrate not only deliberate age discrimination but also an appreciation of its illegality and a resultant attempt to conceal it. Russo's case on both the pretext and willfulness issue may not be strong, but it is sufficient to survive a motion for summary judgment.

In sum, the judgment of the district court is reversed, and the case is remanded for trial of plaintiff's claim of a willful violation of the ADEA.