Joanne **BARBETTA**, Plaintiff,

v.

**CHEMLAWN SERVICES CORPORATION**,
Defendant.

No. CIV–86–503T.

United States District Court,
W.D. New York.

Sept. 22, 1987.

Chamberlain, D'Amanda, Oppenheimer & Greenfield (Peter M. Kaplan, of counsel), Rochester, N.Y., for plaintiff.

Nixon, Hargrave, Devans & Doyle (Eugene D. Ulterino and Marion Blankopf, of counsel), Rochester, N.Y., for defendant.

TELESCA, District Judge.

Plaintiff Joanne Barbetta ("Barbetta") commenced this action pursuant to Title VII and the statutory and common laws of New York, based on her claims of sexual harassment in the workplace as an employee of defendant Chemlawn Services Corporation ("Chemlawn"). Chemlawn has moved for summary judgment dismissing the complaint under Fed.R.Civ.P. 56. I decline to exercise pendent jurisdiction over the state law claims, and Chemlawn's motion is granted with respect to those claims. Chemlawn's motion for summary judgment dismissing the Title VII cause of action for failure to exhaust administrative remedies is denied. I further find that there are substantial questions of material fact precluding the entry of summary judgment with respect to: (1) whether Barbetta was constructively discharged; and (2) whether the conditions at Chemlawn were sufficient to establish her claim of a hostile working environment.

### FACTS

Barbetta was employed by Chemlawn as a Customer Service Specialist with primarily clerical duties from February, 1983 through February, 1985. During this period, Barbetta was subjected to a number of incidents which she maintains constituted a sexually offensive work environment forcing her resignation. Barbetta has produced evidence of the presence of pornograph-

ic magazines in the workplace and vulgar employee comments concerning them, offensive sexual comments made to and about Barbetta by her supervisors, sexually oriented pictures in a company sponsored movie and slide presentation, offensive touching by a male employee, sexually oriented pictures and calendars in the workplace, and other incidents. The evidence also indicates that despite Barbetta's repeated complaints concerning these incidents, Chemlawn allowed some of the practices to continue.

Barbetta resigned in February 1985, approximately four months after the last specifically alleged offensive incident. Her resignation followed a warning given Barbetta by her office manager. Barbetta maintained that the warning was unfair, and she refused to sign it. Barbetta was also experiencing some personal problems at this time. In her letter of resignation, Barbetta stated that she was leaving for "personal reasons". In discussions and exit interviews with Chemlawn supervisory personnel, Barbetta cited a number of reasons for her resignation, including the hostile work environment.

## DISCUSSION

### I. *Pendent jurisdiction over state law claims.*

■ Barbetta has alleged state law causes of action for violation of the New York Human Rights Law, and intentional infliction of emotional distress based on Chemlawn's alleged violation of Title VII and the Human Rights Law. In light of the discretion given me by *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), I decline to hear these state claims under the doctrine of pendent jurisdiction.

The exercise of pendent jurisdiction in this instance would complicate the trial and result in the predominance of state issues. While Title VII does not provide for trial by jury, Barbetta has requested, and is entitled to, a jury trial of her state law claims. Jury confusion is highly likely since the standards differ for finding a violation of Title VII and the New York Human Rights law based on hostile work environment.[1] Moreover, despite Barbetta's attempt to premise her intentional infliction of emotional distress claim on Chemlawn's alleged violation of these statutes, that is a separate cause of action governed by standards different from those of the statutory claims. In addition, the relief available under the state law causes of action is much broader than that available under Title VII, and would require proof relating to Barbetta's demand for compensatory and punitive damages. Due to the probability of jury confusion and the predominance of issues relating to the state law claims at trial, I decline to hear the state law claims and those claims are dismissed.

### II. *Exhaustion of state administrative remedies.*

■ Barbetta's remaining claim under Title VII is not barred for failure to exhaust administrative remedies. Barbetta's single filing with the EEOC constituted a complaint "initially instituted" with the New York State Division of Human Rights ("SDHR") as required by Title VII. *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). Barbetta's admission that she never intended to invoke the jurisdiction of the SDHR as an "election of remedies" does not indicate that this filing was a sham. Barbetta has followed the

1. The standard for proving sex discrimination in employment is much stricter under the New York Human Rights Law than under Title VII. In New York, "the doctrine of *respondeat superior* is not applicable in cases involving sex discrimination." *Hart v. Sullivan*, 84 A.D.2d 865, 866, 445 N.Y.S.2d 40 (3d Dept.1981) (citation omitted), *aff'd*, 55 N.Y.2d 1011, 449 N.Y.S.2d 481, 434 N.E.2d 717 (1982). Moreover, a complainant must allege and prove that the employer had knowledge or acquiesced in the discrimi-

natory conduct of a supervisor or co-worker. *Id.* In contrast, under Title VII, "absence of notice to an employer does not necessarily insulate that employer from liability" for sexual harassment by its supervisors. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986). Constructive knowledge may be sufficient for a finding of employer liability under Title VII. *Taylor v. Jones*, 653 F.2d 1193, 1197–1199 (8th Cir.1981).

often treacherous filing requirements of Title VII. Following waiver by the SDHR and the issuance of a right to sue letter by the EEOC, she properly commenced this action. Chemlawn's motion for summary judgment dismissing the Title VII claim on this ground is denied.

### III. *Barbetta's resignation as a "constructive discharge".*

■ The party seeking summary judgment bears the burden of establishing that there is no genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The proper inquiry to be made by this Court is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). I find that there are substantial factual issues which must be resolved at trial concerning whether Barbetta was constructively discharged.

"In determining whether or not a constructive discharge has taken place, 'the trier of fact must be satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983) (citations omitted); *accord, Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir. 1985). The incidents cited by Barbetta are sufficient to defeat a motion for summary judgment under this standard. While some of these incidents were not directed specifically at Barbetta, and others were not witnessed by her, they are all evidence of a hostile and sexually offensive working environment which a reasonable woman in Barbetta's position eventually could have found intolerable.

■ I disagree with defendant's position that Barbetta's continued employment for four months following the last alleged incident is almost conclusive evidence that she was not constructively discharged, thus warranting a dismissal of her case as a matter of law. The passage of time alone is not dispositive. A constructive discharge need not follow immediately upon the heels of an offensive incident—it need not be a case of the "straw breaking the camel's back". Individuals can tolerate discrimination to varying degrees. Barbetta felt constrained to continue working for a period in an environment which may objectively be found to be "intolerable"; this could be seen as a tribute to her perseverance rather than as a bar to relief. She is entitled to have those reasons for continuing employment during that four month period determined at a trial. Chemlawn's motion for summary judgment dismissing the backpay claim is denied. However, I caution Barbetta that she must prove at trial that the hostile working environment was the overriding factor behind her resignation. My denial of summary judgment at this time is certainly not dispositive.

### IV. *Sufficiency of the evidence of a hostile working environment.*

■ An employee states a claim for "hostile environment" sexual harassment where the sexual harassment is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Savings Bank, FSB v. Vinson, supra*, 106 S.Ct. at 2406 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)). To establish a hostile atmosphere, Barbetta must prove more than a few isolated incidents of sexual harassment. Casual comments, or accidental or sporadic conversation are insufficient. Whether sexual harassment is "sufficiently pervasive" to constitute a Title VII violation is to be determined from the totality of the circumstances. *See Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir.1986) (finding racially hostile work environment among county correction officers).

■ Barbetta has presented sufficient evidence of a hostile working environment to survive a motion for summary judgment. The evidence of pornography in the workplace picturing nude or partially naked women, vulgar comments by employees

and supervisors, the requirement that female employees wear skirts or dresses on certain occasions because a visiting supervisor liked to look at legs, and unwanted physical contact of a sexual nature by a male employee amounts to more than sporadic conduct. Moreover, the alleged incidents of sexual harassment were often directed exclusively at female employees and they were shown to be more offensive to female employees than to their male counterparts. The slide show and the "Uncle Buck" calendar featured pictures of nude or partially naked women—not men. The proliferation of such material may be found to create an atmosphere in which women are viewed as men's sexual playthings rather than as their equal co-workers.[2] Whether the proliferation of demeaning pornography and comments was sufficiently continuous and pervasive to establish a concerted pattern of harassment in violation of Title VII is a question of fact which must be determined at trial.

Barbetta has also produced sufficient evidence to survive a summary judgment motion on the question of Chemlawn's liability for the acts of its employees. On the record before me, a trier of fact could reasonably find that Chemlawn had constructive knowledge of a sexually abusive atmosphere in the workplace and failed to take reasonably sufficient steps to remedy it. *Snell v. Suffolk County, supra,* at 1104–1105. The alleged incidents took place over a period of nearly two years despite protests from Barbetta and other female employees. Moreover, pictures of nude or partially naked women were shown in a company sponsored movie and slide presentation. Chemlawn's motion for summary judgment dismissing the Title VII complaint is denied.

WHEREFORE, defendant Chemlawn's motion for summary judgment dismissing the state law claims is granted as this Court declines to exercise pendent jurisdiction over those claims. Defendant Chemlawn's motion for summary judgment dismissing the Title VII cause of action is denied.

SO ORDERED.

**2.** I recognize that at least one Circuit has held that pornography in the workplace does not provide a basis for a female employee's claim of hostile work environment. In *Rabidue v. Osceola Refining Company,* 805 F.2d 611, 622 (6th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987), the Sixth Circuit stated, "The sexually oriented poster displays had a de minimis effect on the plaintiff's work environment when considered in the context of a society that condones and publicly features and commercially exploits open displays of written and pictorial erotica at the newsstands, on prime-time television, at the cinema, and in other public places." I disagree, and adopt the position taken by Circuit Judge Damon J. Keith in his well-reasoned dissent to that decision. I conclude, as did Judge Keith, "that sexual posters and anti-female language can seriously affect the psychological well-being of the reasonable woman and interfere with her ability to perform her job." *Id.* at 627 (Keith, J. dissenting); *see also,* Note, *Sexual Harassment Claims of Abusive Work Environment Under Title VII,* 87 Harv.L.Rev. 1449, 1458–59 (1984) (advocating reasonable victim standard).