Albert A. SEEDMAN, Plaintiff,

v.

ALEXANDER'S, INC., Roger A. Barrer and Robert Geber, Defendants.

No. 87 Civ. 3719 (JMC).

United States District Court,
S.D. New York.

Dec. 1, 1987.

case has decided that the courtroom should not be closed.

to 1972, Seedman had been a Chief of Detectives of the New York City Police Department. In 1971, Seedman was apparently recruited by defendant Alexander's, Inc. ["Alexander's"], to work as its Chief of Security. In May 1972, when Seedman was 54 years of age, he began working for Alexander's in that capacity.

Seedman alleges that, during 1984, defendants Roger A. Barrer and Robert Geber, Executive Vice President and Senior Vice President of Alexander's, respectively, informed Seedman that it was time for him to leave Alexander's and requested that he resign his position. On June 4, 1985, Seedman submitted a letter of resignation, effective July 26, 1985. On July 26, at the age of 67, he stopped working for Alexander's. Seedman was given 13 weeks severance pay and, in addition, entered into a consulting arrangement with Alexander's, whereby he was paid $500 per pay period for two years beyond the termination of his severance payments.

In November 1986, Seedman filed a complaint with the Equal Employment Opportunity Commission, ["EEOC"], charging Alexander's with unlawful discrimination on account of age. Barrer and Geber were not named in the EEOC charge. This action was commenced on May 29, 1987. Defendants moved to dismiss the complaint and Seedman filed an amended complaint on July 23, 1987. Defendants have renewed their motion to dismiss. The parties having submitted affidavits and other documents extrinsic to the pleadings in this case, and notice having been given in accordance with Fed.R.Civ.P. 12(b), the defendants' motion to dismiss is converted to one for summary judgment and considered accordingly.

Gaffin & Mayo, P.C., Morton S. Minsley, New York City, for plaintiff.

Epstein Becker & Green, P.C., Peter Stergios, Jerrold F. Goldberg, New York City, for defendants.

## MEMORANDUM AND ORDER

CANNELLA, District Judge.

Defendants' motion to dismiss the complaint, having been converted to one for summary judgment, is granted. Fed.R.Civ. P. 12(b), 56(c).

## BACKGROUND

Plaintiff Albert A. Seedman commenced this action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ["ADEA"]. The complaint alleges the following facts, which are deemed true for the purpose of deciding this motion. Prior

## DISCUSSION

The issue raised on the instant motion is whether plaintiff's filing of a charge with the EEOC beyond the statutory limitations period, a fact not disputed by plaintiff, should be excused because of equitable considerations.

In order to commence a federal action based on alleged violations of the ADEA, a plaintiff must first file a charge of discrimination with the EEOC and obtain from it a "right to sue" letter. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974) (Title VII case); *Bradley v. Consolidated Edison Co. of New York, Inc.,* 657 F.Supp. 197, 202 (S.D.N.Y.1987). A plaintiff's claim of age discrimination must be timely filed with the EEOC. *See* 29 U.S.C. § 626(d). The EEOC charge must ordinarily be filed within 180 days of the alleged unlawful act of discrimination. *See id.* § 626(d)(1). The 180–day period is extended to 300 days in a state which, like New York, has a law that prohibits age discrimination and authorizes a state agency to enforce that law. *See id.* § 626(d)(2); *Economu v. Borg–Warner Corp.,* 829 F.2d 311, 315 (2d Cir.1987).

Congress intended that the EEOC filing requirement serve "more as a statute of limitations than as a jurisdictional prerequisite." *Dillman v. Combustion Engineering, Inc.,* 784 F.2d 57, 59 (2d Cir.1986). Accordingly, it is now well established that the filing deadlines are subject to equitable tolling and estoppel under appropriate circumstances. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 395 n. 11, 102 S.Ct. 1127, 1133 n. 11, 71 L.Ed.2d 234 (1982); *Dillman,* 784 F.2d at 59; *Pirone v. Home Ins. Co.,* 507 F.Supp. 1281, 1285 (S.D.N.Y.1981). Nevertheless, "in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Rice v. New England College,* 676 F.2d 9, 11 (1st Cir. 1982); *see Johnson v. AL Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d Cir.1984).

■ Strictly speaking, there is a significant difference between the doctrines of equitable tolling and equitable estoppel. Under equitable tolling, the running of the filing period is tolled when a plaintiff is unaware that he has a claim for age discrimination, or that he has even been the victim of discrimination. The "essence of the doctrine 'is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action.'" *Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985) (citation omitted); *Dillman,* 784 F.2d at 60. This equitable doctrine will be applied when "an employer's misleading conduct is responsible for the employee's unawareness of his cause of action." *Id.; Cerbone,* 768 F.2d at 49–50. Thus, when an employer's conduct is "extraordinary" the commencement of the filing period will be deferred from the time of the alleged discriminatory act to the time the employee should have discovered its nature. *Dillman,* 784 F.2d at 60; *Cerbone,* 768 F.2d at 49; *Miller v. International Telephone and Telegraph Corp.,* 755 F.2d 20, 24 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed. 2d 122 (1985).

■ The doctrine of equitable estoppel, on the other hand, is applied when a plaintiff is aware of the basis for his claim, but fails to commence an action within the filing period due to conduct on the part of the defendant, which later works to estop him from seeking dismissal of the action on timeliness grounds. The doctrine may be applied where an employer misrepresented the length of the filing period, or in some other fashion "lulled the plaintiff into believing that it was not necessary for him to commence litigation." *Cerbone,* 768 F.2d at 50; *see Dillman,* 784 F.2d at 61.

Applying the above principles, it seems clear that the doctrine of equitable estoppel is the more appropriate to be considered under the present circumstances. Seedman has no basis upon which to argue that the filing period should be tolled because he was unaware of his cause of action. Indeed, the complaint suggests that Seedman was aware of Alexander's alleged intent to force him to resign as early as 1984. Seedman argues instead that he was unaware of the ADEA's filing requirements, and was deterred from bringing suit due to his fears of economic retaliation by Alexander's. Thus, Seedman's reliance on cases that tolled commencement of the filing period because the employer had misled the employee about the reasons for termination, *see, e.g., Reeb v. Economic Oppor-*

*tunity of Atlanta, Inc.,* 516 F.2d 924 (5th Cir.1975), are misplaced.

Seedman asserts that he should be forgiven his late filing because (1) at the time of his resignation, he was a codefendant with Alexander's in a pending civil suit that arose from an alleged false arrest of a customer, and feared that Alexander's might not indemnify him if he brought his age discrimination claim; and (2) he did not wish to jeopardize his two-year consulting fee arrangement. Seedman also asserts that he was unaware of the ADEA's filing requirements because he had never been informed about them and such information was not contained in Alexander's personnel manual.

## A. *Lack of Knowledge of ADEA Deadlines*

■ The Court first addresses Seedman's argument that he had neither actual nor constructive knowledge of the applicable filing deadlines. Seedman asserts that he was not made aware of the 300–day requirement in his capacity as Vice–President of Security for Alexander's. He further asserts that information about the filing deadline was not contained in the company's personnel manual, and that the requirements were neither disclosed to him, nor discussed at any of the meetings attended by him. *See* Affidavit of Albert A. Seedman at ¶¶ 9, 10, 87 Civ. 3710 (JMC) (S.D.N.Y. Sept. 8, 1987) ["Seedman Affidavit"].

Defendants have submitted the affidavit of Albert J. Henry, Alexander's Vice–President of Urban Affairs. *See* Affidavit of Albert J. Henry, 87 Civ. 3719 (JMC) (S.D.N.Y. Sept. 25, 1987) ["Henry Affidavit"]. Henry disputes several of Seedman's assertions. Henry states that both he and Seedman were members of Alexander's Operations Committee, which held weekly meetings that were attended by both Henry and Seedman. At these meetings, age discrimination claims filed against Alexander's were discussed. *Id.* ¶ 8. In addition, Henry claims that the required ADEA notice was, at all times relevant to this lawsuit, posted in the employee lounge adjacent to the cafeteria in the Brooklyn store in which Seedman worked. *Id.* ¶ 7.

Seedman's affidavit does not contend that Alexander's failed to post ADEA notices in areas frequented by employees. Thus, there is no dispute concerning the posting of notices required by the ADEA. There exists a dispute as to whether the issue of age discrimination, and presumably employees' rights and obligations under the ADEA, was ever discussed at meetings attended by Seedman. *Compare* Seedman Affidavit ¶ 10 *with* Henry Affidavit ¶ 8. However, this dispute is of no consequence. There is no statutory requirement that an employer inform individual employees of their rights under the ADEA. Accordingly, whether the ADEA was discussed at weekly operations meetings attended by Seedman, or whether Alexander's personnel manual contained information about the ADEA's filing requirements, are not genuine issues of material fact. Fed.R.Civ.P. 56.

## B. *Economic Leverage*

■ Seedman's other argument for an equitable tolling of the limitations period involves the alleged economic leverage asserted over him by Alexander's. Seedman claims that, following his "forced resignation" he remained a codefendant with Alexander's in a pending suit involving a customer's claim of false arrest. *See* Seedman Affidavit ¶¶ 12, 13. Seedman claims that he was being represented in the case by Alexander's attorneys and was concerned that, were he to file an age discrimination claim, Alexander's would no longer defend him in the lawsuit and might not indemnify him against any resulting liability, including punitive damages.

Alexander's insurer's attorney did represent Seedman in the pending civil case. However, the company never entered into any agreement with Seedman to indemnify him. Henry Affidavit ¶ 5. Even assuming a belief on Seedman's part that damages were likely in the civil suit, and that Alexander's had agreed to indemnify him, the fact that Alexander's never made such a

promise completely undermines Seedman's argument in support of equitable estoppel.

Seedman offers no satisfactory basis with respect to his subjective beliefs that justify the application of equitable estoppel. The doctrine "is invoked in cases where the plaintiff knew of the existence of his cause of action but *the defendant's conduct caused him to delay bringing the lawsuit.*" *Cerbone,* 768 F.2d at 50 (emphasis added); *see Dillman,* 784 F.2d at 61. Seedman has failed to show how Alexander's conduct in any way caused him to delay bringing suit for what he considered legitimate claims of age discrimination. Under such circumstances, there exists no genuine issue of material fact as to the alleged equitable considerations, and summary judgment is appropriate. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Johnson,* 731 F.2d at 146.

The second prong of Seedman's economic leverage argument is that he feared he would be deprived of certain post-termination benefits, namely, the consulting fees, if he filed a claim of age discrimination against Alexander's. Generally, "the fear of losing severance payments should not ... create an equitable consideration sufficient to toll the ADEA filing period." *Chambers v. European American Bank and Trust Co.,* 601 F.Supp. 630, 637–38 (E.D.N.Y.1985). Here again, Seedman has presented no facts whatsoever which indicate, or even form a basis from which a reasonable inference in his favor might be drawn, that Alexander's did anything to suggest it would repudiate the two-year consulting arrangement.

As with Seedman's fear regarding indemnification, allegations of earlier subjective belief are not enough to create a genuine issue of material fact. The Court agrees with defendants that such allegations of Alexander's "passive influence" over Seedman are insufficient to defeat summary judgment. Because Seedman has not shown "deliberate misconduct or bad faith" on the part of Alexander's with respect to his claims of economic leverage, there exists no basis to justify equitable tolling of the ADEA's filing requirement. *See O'Malley v. GTE Service Corp.,* 758 F.2d 818, 820 (2d Cir.1985); *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109–11 (2d Cir.1978); *Pfister v. Allied Corp.,* 539 F.Supp. 224 (S.D.N.Y.1982).

## C. *Individual Defendants*

■ Seedman has also asserted claims against defendants Barrer and Geber. Seedman asserts that "[i]n 1984, Barrer and Geber, on behalf of and as officers of Alexander's, informed [him] that it was time ... to leave" and requested he resign. Amended Complaint ¶ 19. Seedman also asserts that he signed his letter of resignation "under duress and at the direction of Barrer." *Id.* ¶ 20.

Subsection 706(f)(1) of Title VII provides that "a civil action may be brought against the respondent named in the [EEOC] charge." 42 U.S.C. § 2000e–5(f)(1). Neither Barrer nor Geber were named in Seedman's EEOC complaint. Defendants argue that, on this basis alone, the ADEA claim against Barrer and Geber must be dismissed. *See Allen v. Colgate–Palmolive Co.,* 539 F.Supp. 57, 69 (S.D.N.Y.1981).

As a general rule, a party not named in the EEOC charge cannot be named in the subsequent civil suit. *See* 29 U.S.C. § 626(d); *Silver v. Mohasco,* 602 F.2d 1083, 1086 n. 7 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Allen,* 539 F.Supp. at 69; *Travers v. Corning Glass Works,* 76 F.R.D. 431, 432–33 (S.D.N.Y.1977). An exception will be made when notice of an intent to sue is given to the corporate employer and the defendants in the federal action are given "actual notice that their individual conduct was being investigated." *Allen,* 539 F.Supp. at 69 (citation omitted).

A number of factors suggest that the claims against Barrer and Geber must also be dismissed. Notice to Alexander's of an intent to sue was first given in November 1986, when Seedman filed with the EEOC. Neither Barrer nor Geber were named in the EEOC charge, and Geber was not even mentioned. Seedman offers no evidence to

suggest that either of the individual defendants received actual notice that their *particular* conduct was being investigated. In any event, none of the equitable considerations advanced by Seedman with respect to Alexander's take on any greater weight with respect to Barrer and Geber. Lastly, Seedman argues that Barrer and Geber personally made the decision to force him to resign, and were, therefore, not acting within the scope of their authority as employees, but rather, were acting as employers who should be subject to the ADEA. The Court has considered this argument and finds it to be without merit.

The Court has concluded that no genuine issue of material fact has been raised with respect to the equities involved in plaintiff's failure to file his ADEA claim within the statutory period. Accordingly, defendants' motion to dismiss the complaint, having been converted to one for summary judgment, is granted. The Court declines to exercise pendent jurisdiction over Seedman's state law claims for wrongful discharge, breach of contract and fraud. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## CONCLUSION

Defendants' motion to dismiss the complaint, having been converted to one for summary judgment, is granted. Fed.R.Civ. P. 12(b), 56(c). The Clerk of the Court is directed to enter judgment for the defendants and to dismiss the complaint.

SO ORDERED.