**Evelyn R. DRUMMER, Plaintiff,**

v.

**DCI CONTRACTING CORP., d/b/a DCI Contracting Corporation, Marvin Rosenthal, and Kathy Morrissey, Defendants.**

**No. 90 Civ. 7411 (RWS).**

United States District Court, S.D. New York.

Sept. 16, 1991.

As Amended Sept. 18, 1991.

---

1. Defendant is presently incarcerated in the Federal Institution in Morgantown, West Virginia.

Solotoff & Solotoff, P.C. (Lawrence Solotoff, of counsel), Great Neck, N.Y., for plaintiff.

Parker Chapin Flattau & Klimpl (Michael Starr, of counsel), New York City, for defendants.

## OPINION

SWEET, District Judge.

Plaintiff Evelyn Drummer ("Drummer") brought this action against DCI Contracting Corp. ("DCI"), Marvin Rosenthal ("Rosenthal"), and Kathy Morrissey ("Morrissey," and collectively "Defendants") alleging that they violated Title VII of the Civil Rights Act of 1964, specifically 42 U.S.C. §§ 2000e–2(a)(1)(2) and 2000e(k), and the New York Human Rights Law, N.Y.Exec. Law § 296(1)(a), by discriminating against her on the basis of her pregnancy and orthodox Jewish belief and practices. Defendants now move to dismiss the first and third causes of action of Drummer's complaint pursuant to Rules 12(b)(1) and (6), Fed.R.Civ.P. For the following reasons Defendants motions are granted in part and denied in part.

### The Parties

Drummer is an orthodox Jewish woman residing in Brooklyn, New York.

DCI is a contracting corporation organized under the laws of the State of New York with its principal place of business in New York City. Rosenthal is president of DCI. At all times relevant to the events in question, Morrissey was purchasing manager for DCI. She is no longer employed by DCI.

### Background

Drummer began her employment with DCI as assistant to the purchasing manager on August 10, 1987, was promoted to supervisor on July 1, 1988, and then to purchasing manager in November of 1988. At the beginning of her employment, Drummer advised Defendants that she was an orthodox Jew who observed religious holidays and the Sabbath. When necessary, she was required to take days off from work for religious holidays and to leave before sundown on Friday afternoons in observance of the Sabbath. DCI adjusted her schedule to accommodate these practices.

Drummer's complaint in this action alleges, however, that, beginning in November of 1987, she was harassed, and her upward progress at DCI impeded, on the basis of her religion. She claims that Morrissey repeatedly complained about Drummer's time off from work and early departures on Fridays for religious reasons, stating that "you Jews take a lot of time off." She was allegedly informed that Morrissey and Rosenthal were concerned that her orthodox beliefs and/or possible future pregnancy would disrupt the operation of the purchasing department and that this would not be tolerated. Drummer claims that during the fall and winter of 1988, Morrissey told her that she was not entitled to take Jewish holidays off because "we cannot make an exception for you," that she could not be paid for those days she did take off, and that she would never be promoted at DCI because of her religious observances.

On or about December 20, 1988, Drummer informed Defendants that she was pregnant and that she intended to continue working throughout the pregnancy and to return to work after the baby's birth.

Drummer's employment at DCI was terminated on February 17, 1989, although she was continued on the payroll until March 6, 1989 because of accrued vacation time.

On May 16, 1989, she filed with the New York State Division of Human Rights ("SDHR") a complaint (the "Human Rights Complaint") alleging unlawful employment discrimination by DCI under the New York Human Rights Law ("HRL"), N.Y.Exec. Law Art. 15 and under Title VII of the Civil Rights Act of 1964 ("Title VII"). She alleged in the Human Rights Complaint that she had been "harass[ed]," passed over for promotion, and ultimately terminated after informing DCI on December 20, 1988 that she was two months pregnant. The "harassment" took the form of being told that she would soon have to work shorter days, and that she would not be a good mother if she left to return to work. Drummer checked the box entitled "Sex" in indicating the form of violation of which she was complaining. The Human Rights Complaint contained no references to religious discrimination or harassment of any kind. Neither Rosenthal nor Morrissey were named individually as parties in the Human Rights Complaint although they were described in the body of the complaint as the individuals responsible for the allegedly discriminatory conduct.

DCI answered the Human Rights Complaint on May 25, 1989, denying Drummer's allegations of sexual discrimination and asserting that she was terminated for cause of which she was repeatedly advised prior to announcing her pregnancy, specifically her inability to supervise her department. A supplemental letter to the SDHR dated May 25, 1989, indicated that problems leading to Drummer's termination included problems with inventory control, time away from work, over-ordering of materials, and lack of control of stock transfers for billing purposes.

On June 26, 1989, Drummer's counsel appeared in the SDHR proceeding and offered to discuss a possible resolution of Drummer's claim with DCI. No such efforts were made toward Rosenthal or Morrissey.

In September of 1989, DCI received from the Equal Opportunity Employment Commission ("EEOC") a notice of charge of discrimination (the "EEOC Charge") asserting that a charge of employment discrimination under Title VII had been received by the SDHR and the EEOC for dual filing purposes. The EEOC Charge cross-referenced and incorporated the Human Rights Complaint.

Under the category "Basis of Discrimination" contained in the EEOC notice of charge form, Drummer checked the box for "Sex" and indicated that "termination" constituted the "Circumstances of Alleged Violation." The EEOC Charge named only DCI as defendant.

On April 12, 1990 Drummer amended the Human Rights Complaint to add the allegation that her termination was also motivated by religious discrimination in violation of the HRL and Title VII. The amendment named neither Rosenthal nor Morrissey as respondents. DCI denied the allegation of religious discrimination in its amended answer of May 22, 1990. Neither the SDHR nor the EEOC took any action to investigate or conciliate the new allegations.

On September 10, 1990, DCI received a copy of a September 5, 1990 EEOC notice of right to sue addressed to Drummer, referencing the EEOC Charge.

Drummer served her complaint on DCI in this action on November 19, 1990. The complaint alleges three causes of action: (1) that from November 1987 through March 1989 Defendants discriminated against her on the basis of her orthodox Jewish practices and beliefs in violation of Title VII, 42 U.S.C. § 2000e–2(a)(1), (2); (2) that Defendants discriminated against her from December 20, 1988 on the basis of her pregnancy in violation of Title VII, 42 U.S.C. § 2000e(a) and (k); and (3) that by the acts of sex and religious discrimination and harassment alleged in the first two causes of action, Defendants violated New York Executive Law § 296(1).[1]

1. Drummer has withdrawn her original fourth cause of action in which she alleged state law

Defendants now move to dismiss the Title VII religious discrimination and harassment claims on the grounds that they are time-barred. They also move to dismiss the Title VII claims against Rosenthal and Morrissey individually on the grounds that they were not named in the EEOC charge. They move to dismiss the HRL claims for lack of pendent jurisdiction.

*Discussion*

1. Standard for a Motion to Dismiss

A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., only if it appears beyond doubt that the plaintiff can prove no set of facts supporting its claim that would entitle it to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must construe the complaint's allegations in the light most favorable to the plaintiff and accept those allegations as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Assoc.,* 423 F.2d 188, 191 (2d Cir. 1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970).

### A. *Charge of Religious Discrimination is Time–Barred*

As a prerequisite to bringing a Title VII action in federal court, a complainant must file a charge with the EEOC within 300 days of the alleged unlawful act.[2] 42 U.S.C. § 2000e–5(e); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Travers v. Corning Glass Works,* 76 F.R.D. 431, 432 (S.D.N.Y.1977). The purpose of the filing procedures is to convey prompt notice to the employer, thereby encouraging

conciliation wherever possible. *Adames v. Mitsubishi Bank Ltd.,* 751 F.Supp. 1565, 1570 (E.D.N.Y.1990).

The parties do not dispute that Drummer timely filed her EEOC Charge alleging pregnancy discrimination by DCI during the last two months of her employment. They also do not dispute that she amended the EEOC Charge, adding allegations of religious discrimination, outside the 300–day period. Drummer argues, however, that her amended complaint relates back to the date of the original, timely charge.

29 C.F.R. § 1601.12(b) provides that:

A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred.

The first question to be resolved, then, is whether Drummer's untimely amendment charging religious discrimination in her termination "relates back" to the date of the original filing.

■ Although courts generally are not wont to hold Title VII plaintiffs to rigorous requirements of specificity in naming the form of discrimination allegedly suffered, *see, e.g., Silver v. Mohasco Corp.,* 602 F.2d 1083, 1087 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Adames v. Mitsubishi Bank Ltd.,* 751 F.Supp. 1565, 1572 (E.D.N.Y.1990); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 464 (5th Cir. 1970); *Bernstein v. National Liberty Int'l Corp.,* 407 F.Supp. 709, 712 (E.D.Pa.1976), relation back is not appropriate where the facts alleged in the timely EEOC charge refer exclusively to one type of discrimina-

---

claims of gross negligence and intentional infliction of emotional distress.

**2.** Because New York is a "deferral" state under Title VII, a Title VII plaintiff has 300 days from

the alleged discriminatory occurrence to file an EEOC charge. *See Alveari v. American Int'l Group, Inc.,* 590 F.Supp. 228, 231 (S.D.N.Y.1984).

tion wholly distinct from that alleged in the untimely amendment. *See, e.g., Rizzo v. WGN Continental Broadcasting Co.*, 601 F.Supp. 132, 135 (N.D.Ill.1985).[3]

■ Under authorities cited by Defendants, Drummer's religious discrimination is not "like or related to" her original claim of pregnancy discrimination. *See Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 675 (9th Cir.1988); *Rizzo*, 601 F.Supp. at 135.

In *Pejic v. Hughes Helicopters, Inc.*, for instance, the court determined that an untimely amendment charging age discrimination did not relate back to the original, timely charge of national origin discrimination because the original charge contained "no hint of age discrimination." *Pejic*, 840 F.2d at 675. Likewise, in *Rizzo v. WGN Continental Broadcasting*, the court found that an untimely amendment adding a sex discrimination claim was not "like or related to" the original age discrimination claim because all of the allegations of the original complaint referred to defendant's mandatory early retirement program and thus "fail[ed] to allude to any act of WGN from which sexually discriminatory conduct may be inferred." *Rizzo*, 601 F.Supp. at 135.

As in *Pejic*, Drummer's original charge contained absolutely no intimation of religious discrimination: the charges make no reference to religion, time off for religious observances, or derogatory remarks related to religion. More importantly, however, each fact that she did allege was directly related to her pregnancy, making this case very much like *Rizzo*. She stated, for example, that *"since* informing respondent about [her] *pregnancy"* Morrissey complained that she would "soon have to work shorter days and probably not want to travel to work," and told her that she "would not be a good *mother* or love [her] *child* if [she] left it to return to work," and that she "was being too sensitive and 'it was

[her] *hormones'* anytime [she] questioned anything work related." Human Rights Complaint at 1, ¶ 5 (emphasis added).

Despite the apparent exclusivity of this language, Drummer claims that the religious discrimination charge is "like or related" to the charge of pregnancy discrimination because both types of discrimination took the form of objections by her supervisor to time off from work. In this regard, she invokes *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970). In *Sanchez*, the court allowed relation back of an untimely amendment charging national origin discrimination to the original charge of sex discrimination. *Id.* at 464. It found that defendant's act of hitting plaintiff on the buttocks and causing her to injure herself, alleged in the original complaint, was motivated by both sex and national origin discrimination and that the untimely amendment therefore merely amplified the original complaint. *Id.*

Following *Sanchez*, it has been held that "[t]he failure to attach a legal conclusion, such as sexual discrimination, to the factual occurrences complained of has been interpreted to be a 'technical defect' within the meaning of § [1601.12(b) ]," *Bernstein v. National Liberty Int'l Corp.*, 407 F.Supp. 709, 712 (E.D.Pa.1976) (citing *Sanchez*, 431 F.2d at 464).

The problem here, however, lies not in the legal conclusion Drummer attached to her allegations of fact but in the facts themselves. Each of Defendants' complaints cited in the original EEOC Charge specifically relates to Drummer's pregnancy. Drummer makes no reference to generalized complaints about time off of work or to complaints that might indicate that there was something more behind them than her pregnancy, as, for example, a complaint that this would be yet *another* reason for taking *more* time off. The fact that Defendants also may have complained about time off for religious observances at

---

**3.** One reason militating in favor of liberal construction of allegations of discrimination is that Title VII plaintiffs generally are unversed in legal technicalities. *See Silver*, 602 F.2d at 1087, 1090 (Title VII plaintiffs, who often proceed without counsel, "should not be held to the

precision of a code pleader"). However, the import of this concern is tempered in this case because Drummer was represented by counsel virtually throughout the SDHR proceedings, and certainly for the last six months of the 300–day filing period.

some time is not a basis for finding relatedness to the strictly pregnancy-related facts alleged in the EEOC Charge. These acts are thus distinguishable from the generic factual basis the *Sanchez* court found amenable to multiple interpretations.[4]

The court thus finds that the untimely amendment to the EEOC Charge charging religious discrimination in connection with Drummer's termination does not relate back to the original charge.

### B. *Religious Harassment Claim Is Time–Barred*

■ The second question is whether this court may consider Drummer's allegations of religious harassment over the fourteen-month period preceding her pregnancy, which she asserts for the first time in the judicial complaint.

Although a Title VII plaintiff must first file any charges with the EEOC before she may bring a judicial action, courts have held that the proper scope of any private lawsuit resulting from the EEOC charge encompasses not only the claims presented in the charge but also those that reasonably could be expected to grow out of the EEOC investigation of the charge. *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978); *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir.1978); *Oubichon v. North Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973); *Adames*, 751 F.Supp. 1565, 1574 (E.D.N.Y.1990); *Meyer v. MacMillan Publishing Co.*, 85 F.R.D. 149, 151 (S.D.N.Y.1980). The question before this court is whether the EEOC reasonably could have been expected to investigate Drummer's religious harassment claim as an outgrowth of the allegations in the orig-inal EEOC Charge. *Cf. Hicks*, 572 F.2d at 966 (correct inquiry is scope of EEOC investigation that *could* be expected to grow out of charge not actual scope).

The answer in this case is no. For the EEOC reasonably to be expected to investigate a charge, it must somehow have been alerted to the claim. *Meyer*, 85 F.R.D. at 151. In *Silver v. Mohasco*, 602 F.2d 1083 (2d Cir.1979), for instance, the court held that the EEOC had been alerted to a claim of blacklisting not included in the EEOC charge alleging religious discrimination. The new claim, it found, could not be said to "have caught the EEOC by surprise" because the plaintiff's charge had alleged the existence of a "comprehensive plan" directed at Jewish executives. *Id.*

Similarly, in *Hicks v. ABT Assocs.*, 572 F.2d 960 (3d Cir.1978), the Third Circuit found the appropriate nexus between the original charge of race discrimination and sex discrimination because the plaintiff's new allegation of disparate treatment on the basis of sex related to the same supervisors from whom he claimed he received disparate treatment on the basis of race. Thus, the instances of sex discrimination complained of arose from the very same acts which supported his claim for race discrimination.

This case, however, is much closer to one like *McGuire v. United States Postal Service*, 749 F.Supp. 1275 (S.D.N.Y.1990). There, the court refused to consider plaintiff's allegation that his dismissal was motivated by retaliation because nothing in the EEOC proceedings suggested that he had ever made this contention. *Id.* at 1288. Moreover, the events he had referred to in his EEOC charge occurred many months before the dismissal. *Id.; see also Meyer*, 85 F.R.D. at 151 (because EEOC never

---

**4.** This case is also distinguishable from *Adames v. Mitsubishi Bank Ltd.*, 751 F.Supp. 1565 (E.D.N.Y.1990), decided by a court in this circuit. In *Adames*, the court held that a late amendment adding an allegation of race and color discrimination merely "amplified" the original EEOC charge alleging national origin discrimination and thus could be properly included in the action. *Id.* at 1574. In that case, plaintiffs alleged that their employer, a Japanese bank, had discriminated against non-Asian employees. *Id.* at 1568. Their original EEOC charge articulated the claim as one for national origin discrimination. The court found that a race discrimination claim could reasonably be expected to grow out of the EEOC investigation of national origin discrimination. It cannot be disputed that the difference between a pregnancy discrimination claim and a religious discrimination claim is far greater than the nuance presented on the facts of *Adames*.

alerted to claim of retaliation, plaintiff could not make this claim in judicial action).

The acts alleged in Drummer's EEOC Charge did not alert the EEOC to religious discrimination. As discussed above, the acts alleged are all specifically pregnancy related. More importantly, as in *McGuire*, the allegations in the EEOC Charge are temporally limited; they refer the EEOC only to the period between December 20, 1988 and February 17, 1989. The acts alleged in the judicial complaint, on the other hand, occurred fourteen months before those alleged in the Human Rights Complaint. There is no apparent reason to believe that an EEOC investigation of pregnancy-related discrimination from and after the announcement of Drummer's pregnancy would evolve into an investigation of religious harassment over the course of more than a year preceding that time.

For the reasons discussed above, Drummer may not maintain this suit for religious discrimination and harassment under Title VII.

### C. *Drummer's Title VII Claim Against Morrissey is Dismissed*

Drummer has brought this action against not only DCI, her former employer, but also against Rosenthal and Morrissey individually. They are sued for personal liability for each of Drummer's two Title VII causes of action although neither was named as a respondent in either the Human Rights Complaint or the EEOC Charge.

Section 706(e) of Title VII provides that "a civil action may be brought against the respondent named in the [EEOC] charge." 42 U.S.C. § 2000e–5(f)(1). As a general rule, a party not named in the EEOC charge cannot be named in the subsequent civil suit. *Giuntoli v. Garvin Guybutler Corp.*, 726 F.Supp. 494, 497 (S.D.N.Y.1989); *Seedman v. Alexanders, Inc.*, 683 F.Supp. 924, 928 (S.D.N.Y.1987); *Allen v. Colgate–Palmolive Co.*, 539 F.Supp. 57, 69 (S.D.N.Y.1981); *Travers v. Corning Glass Works*, 76 F.R.D. 431, 433 (S.D.N.Y.1977). This notice requirement serves the two important purposes of notifying the charged party of the asserted violation and permitting the effectuation of Title VII's primary goal of securing voluntary compliance with the law by bringing the charged party before the EEOC. *Travers*, 76 F.R.D. at 432 (quoting *Bowe v. Colgate–Palmolive*, 416 F.2d 711, 719 (7th Cir.1969)).

It is undisputed that neither Rosenthal nor Morrissey were named in either the Human Rights Complaint or the EEOC Charge. Thus, applying the general rule, Drummer may not maintain this civil action against either of the individual defendants.

■ Drummer argues, however, that Rosenthal and Morrissey are amenable to suit under the exception to the general rule. Under this exception, individuals not named in the EEOC charge may be sued in a subsequent civil action if they have been given actual notice that their conduct is being investigated and notice of intent to sue is given to the corporate employer. *Seedman*, 683 F.Supp. at 928; *Allen*, 539 F.Supp. at 69. Drummer posits that, because the EEOC Charge included specific references to Rosenthal, Morrissey, and their conduct "[i]t would be unlikely that neither Rosenthal, nor Morrissey was unaware of the 'NOTICE OF CHARGE OF DISCRIMINATION.'" Plaintiff's Memo. in Opp. at 20. Drummer argues that dismissal prior to discovery as to the degree of Rosenthal's and Morrissey's "aware[ness]" of the pending investigation would be premature.

■ The court agrees with Drummer with respect to Rosenthal but not with respect to Morrissey. Drawing all reasonable inferences in favor of Drummer, it is reasonable to infer that, as president of DCI, Rosenthal would have been aware of the investigation and of the fact that his specific conduct was at issue. *See Giuntoli*, 726 F.Supp. at 499–500. In fact, Rosenthal does not deny knowledge of the investigation, but merely states that no EEOC conciliation efforts were made toward him. Moreover, a Dunn & Bradstreet search offered by Drummer indicates that as of May 30, 1990, 100% of the stock of DCI was owned by its officers, thus raising a question as to whether Rosenthal has an owner-

ship interest in DCI. Plaintiff's Aff. in Opp. at Exhibit L. Ownership may imply actual notice. *Cf. Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542–44, 483 N.Y.S.2d 659, 660–61, 473 N.E.2d 11, 12–13 (1984) (corporate officer not shown to have ownership interest in defendant corporation not individually subject to suit under HRL or ADEA).

With the factual issue of Rosenthal's awareness of his role in the investigation unanswered, it would be inappropriate to dismiss the Title VII claim against Rosenthal. Defendant's motion to dismiss this claim is thus denied.

■ However, there is no particular reason to imply actual notice to Morrissey, who was a mere employee of DCI. The mere fact that Morrissey and her conduct were specifically mentioned in the EEOC Charge is not enough to satisfy the requirement that she have actual notice that her conduct was being investigated. The Honorable Edward Weinfeld addressed a similar factual situation in *Travers v. Corning Glass Works*, 76 F.R.D. 431 (S.D.N.Y.1977). In that case, the SDHR complaint, EEOC charge, and right to sue letter named only the corporate employer as defendant. Plaintiff brought his Title VII action against Corning Glass Works ("Corning") and his supervisor, Mustafa. The complaints filed with the SDHR and EEOC described Mustafa and discriminatory statements he had made. Indeed, the allegations against Mustafa were the basis for the charge against Corning, as the allegations against Rosenthal and Morrissey appear to be the basis for Drummer's charge against DCI. Nevertheless, EEOC conciliation efforts were directed solely at Corning; it was uncontroverted that the conciliation efforts did not extend to Mustafa.

Despite Mustafa's prominence in the description of the alleged discrimination, the court found that he could not be sued be-

cause he was never individually charged in the EEOC charge. Recognizing that procedural technicalities should not bar Title VII claims and that ambiguities are to be resolved in favor of the claimants, the court nevertheless held that "the failure to charge [an individual defendant] as a respondent if it was intended to hold him personally liable is not a procedural technicality but a matter of substance" because the dual purposes of the general rule would otherwise go unfulfilled. *Travers*, 76 F.R.D. at 433.

It is uncontroverted that Morrissey was not named in the EEOC Charge and that no EEOC conciliation efforts were made towards her. Thus, neither of the "important purposes of Title VII" was addressed with respect to Morrissey: she was not notified of the claims against her and was not brought before the EEOC to attempt to secure voluntary compliance with the law.[5]

2. Dismissal of SDHR Complaint for "Administrative Convenience" Negates Defendants' Election of Remedies Argument

■ Drummer's third cause of action asserts claims for violations of the HRL in the form of sex and religious discrimination. N.Y.Exec.Law § 297(6). She maintains that this court may hear these state law claims under the doctrine of pendent jurisdiction. Before reaching the question of whether this court may exercise pendent jurisdiction, however, the court must consider whether Drummer made an election of remedies by bringing her complaint before the SDHR which bars her from seeking judicial relief for these claims.

Section 297(9) of the New York Executive Law provides that an aggrieved party may assert a claim for discrimination under the HRL:

> in any court of appropriate jurisdiction ..., unless such person has filed a complaint hereunder or with any local commission on human rights, ... provided

---

5. Drummer's claim that Morrissey may be held liable as an "agent" of DCI is simply without merit. The case she cites in support, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), would, if anything, stand for the proposition that a corporate employer without notice of a charge can be held liable for the acts of its agent who does receive notice. *See id.* at 69, 106 S.Ct. at 2407.

that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed.

*See Song v. Ives Labs., Inc.*, 735 F.Supp. 550, 552 (S.D.N.Y.1990); *Keeley v. Citibank, N.A.*, 711 F.Supp. 157, 161 (S.D.N.Y.1989); *Leake v. Long Island Jewish Medical Center*, 695 F.Supp. 1414, 1418 (E.D.N.Y.1988), *aff'd*, 869 F.2d 130 (2d Cir. 1989). While pending, SDHR proceedings are exclusive. N.Y.Exec.Law § 300. This scheme has been stringently upheld, even with respect to claims brought under the Age Discrimination in Employment Act ("ADEA"), which effectively precludes the bringing of state human rights claims pendent to the federal claim. *See, e.g., Hunnewell v. Manufacturers Hanover Trust Co.*, 628 F.Supp. 759, 761 (S.D.N.Y.1986).

New York Executive Law § 297(3)(c) provides that "the division may in its unreviewable discretion, at any time prior to a hearing before a hearing examiner dismiss the complaint on the grounds of administrative convenience." "Unreviewable" as the SDHR's discretion may be, however, judicial review has been deemed appropriate where the dismissal is "purely arbitrary," that is, where it "contravene[s] a statute, constitutional right, or administrative regulation." *Marine Midland Bank, N.A. v. New York State Div. of Human Rights*, 75 N.Y.2d 240, 246, 552 N.Y.S.2d 65, 67, 551 N.E.2d 558, 560 (1989); *cf. Pan Am. World Airways, Inc. v. New York State Human Rights Appeal Bd.*, 61 N.Y.2d 542, 547, 475 N.Y.S.2d 256, 463 N.E.2d 597 (1984) (Human Rights Appeal Board has limited power of review over dismissal to determine if it was "arbitrary").

While Drummer maintains that the SDHR's administrative convenience dismissal allows her to bring these claims in a judicial action, Defendants urge that the administrative convenience dismissal in this case was "arbitrary" because Drummer requested it solely to pursue judicial relief in federal court. They argue that this "litigation ploy" "circumvent[s] the statutory structure of the Human Rights Law." Def. Reply Memo. at 9 (citing *National Broadcasting Co. v. SDHR*, No. 27068–89 (Sup.Ct. Mar. 7, 1988), *aff'd mem.*, 144 A.D.2d 1046, 534 N.Y.S.2d 58 (1st Dept. 1988)).

Regardless of what motivated Drummer to request an administrative convenience dismissal, however, the plain language of the applicable regulation dictates that this dismissal not be found "arbitrary." The New York Codes Rules and Regulations provides that:

(1) If the division finds that ... noticing the complaint for hearing would be ... undesirable, the division may, in its unreviewable discretion at any time prior the taking of testimony at a public hearing ..., dismiss the complaint on grounds of administrative convenience.

(2) The grounds for dismissal of a complaint for administrative convenience may include, but not be limited to, the following:

. . . .

(vi) *the complainant has initiated or wants to initiate ... [a] court action based on the same grievance.*

9 NYCRR § 465.5(d)(2)(vi) (emphasis added); *see also Realmuto v. Yellow Freight Sys., Inc.*, 712 F.Supp. 287, 290–91 (E.D.N.Y.1989) (administrative convenience dismissal valid where plaintiff requested dismissal so he could bring judicial action); *New York Telephone Co. v. New York State Div. of Human Rights*, 561 N.Y.S.2d 401, 405, 148 Misc.2d 765, 770 (Sup.Ct. 1990).

Defendants erroneously cite *National Broadcasting Co. v. SDHR*, No. 27068–89 (Sup.Ct. Mar. 7, 1988), *aff'd mem.*, 144 A.D.2d 1046, 534 N.Y.S.2d 58 (1st Dept. 1988), as authority for the proposition that administrative convenience dismissals granted to allow judicial action to proceed are arbitrary. That case was decided before NYCRR 465.5(d) was amended to clarify that an appropriate grounds for administrative convenience dismissals include the existence of or desire to initiate judicial action on the same grievance. *See New*

*York Telephone Co.,* 561 N.Y.S.2d at 405, 148 Misc.2d at 770 (distinguishing *National Broadcasting* in light of amended regulation).

Defendants also object to the administrative convenience dismissal of Drummer's HRL religious discrimination claim because the amendment containing the claim was made more than one year after the alleged discriminatory act thus depriving the SDHR of jurisdiction over that claim. Defendants claim that the SDHR should have dismissed the religious discrimination claim for lack of jurisdiction rather than for administrative convenience.

Defendants point the court to the case of *Marine Midland Bank, N.A. v. New York State Division of Human Rights,* 75 N.Y.2d 240, 552 N.Y.S.2d 65, 551 N.E.2d 558 (1989), in which the New York State Court of Appeals held that the SDHR may not dismiss time-barred complaints on grounds of administrative convenience merely to permit subsequent judicial proceedings. *Id.* at 246, 552 N.Y.S.2d at 67, 551 N.E.2d at 560. Any other result, the court there reasoned, would render meaningless the one year statute of limitations for commencing administrative proceedings. *Id.; see* N.Y.Exec.Law § 297(5).

Nevertheless, *Marine Midland* does not address the question of whether *amendments* to timely complaints, filed outside the one year statute of limitation, may properly be dismissed for administrative convenience. Under New York law, an SDHR complainant may amend any complaint "reasonably and fairly," N.Y.Exec. Law § 297(4)(a), "in any manner, prior to a finding of probable cause or no probable cause." 9 NYCRR § 465.4(b)(1). Moreover, there is no evidence that the SDHR has determined that the amendment was untimely. *See Adames,* 751 F.Supp. at 1576. Indeed, the SDHR rejected Defendants' objection to the amendment on that ground. Finally, Defendants have pointed to no regulation, statute, or constitutional provision that the agency's action has contravened in granting the administrative convenience dismissal of this claim. *See id.*

For these reasons, the administrative convenience dismissal negates Defendants' claim that Drummer is barred from bringing her HRL claims in this court.

3. Pendent Jurisdiction

A federal court has the power to hear state law claims under the doctrine of pendent jurisdiction if the state and federal claims derive from a "common nucleus of operative fact" such that the plaintiff ordinarily would be expected to try them all in one judicial proceeding. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Pendent jurisdiction is a discretionary doctrine, however. *Id.* The court "should" dismiss the state claims if the federal claims are dismissed before trial, and "may" decline to exercise its power over the state claims if it appears that state issues substantially predominate, or if non-jurisdictional reasons, such as the likelihood of jury confusion, justify separating state and federal claims for trial. *Id.* at 726–27, 86 S.Ct. at 1139. The court must balance "considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire and Marine Ins. Co.,* 597 F.2d 798, 809 (2d Cir. 1979).

A. *No Basis Exists for Pendent Jurisdiction over HRL Religious Discrimination and Religious Harassment Claims*

Because this court has held that Drummer's federal claims of religious discrimination and religious harassment must be dismissed, pendent jurisdiction over her parallel state law claims is inappropriate under *Gibbs.*

B. *Pendent Jurisdiction Exists over HRL Sex Discrimination Claim*

Pendent jurisdiction is appropriate with regard to Drummer's claim of sex discrimination under the HRL.

The undisputed factual similarity between the state and federal sex discrimination claims empowers the court to hear them together. Defendants argue that the predominance of issues relating to the

state claim and the potential for jury confusion nevertheless militate in favor of dismissal of the HRL claim. They claim that several differences between the statutory schemes of Title VII and the HRL justify such a finding.

Defendants first point out that Title VII does not provide for trial by jury, whereas Drummer is entitled to a jury trial on her state claims. *Barbetta v. Chemlawn Servs. Corp.*, 669 F.Supp. 569, 571 (W.D.N.Y.1987). Secondly, they identify differences in the standards for proving liability under Title VII and the HRL. Under the HRL, for example, the doctrine of *respondeat superior* is not applicable; to prevail against her employer, the complainant must allege and prove that the employer had knowledge or acquiesced in the discriminatory conduct of the employee or supervisor. *See id.* at 571 n. 1 (citing *Hart v. Sullivan*, 84 A.D.2d 865, 866 445 N.Y.S.2d 40 (3d Dept.1981), *aff'd*, 55 N.Y.2d 1011, 449 N.Y.S.2d 481, 434 N.E.2d 717 (1982)). Under Title VII, on the other hand, "absence of notice to an employer does not necessarily insulate that employer from liability" for sexual harassment by employees. *Meritor*, 477 U.S. at 69, 106 S.Ct. at 2407. Finally, Defendants argue that jury confusion is likely because Drummer is entitled to seek compensatory, and possibly punitive, damages under state law, N.Y.Exec.Law § 297(4)(c)(iii), but not under Title VII, *see Sims v. Mme. Paulette Dry Cleaners*, 638 F.Supp. 224, 230 (S.D.N.Y.1986).[6]

District courts in the Second Circuit appear to be split on the question of whether pendent jurisdiction is appropriate in a case such as this. *Compare, e.g., Song v. Ives*, 735 F.Supp. 550, 554 (S.D.N.Y.1990) (exercising pendent jurisdiction in Title VII case) *and Giuntoli v. Garvin Guybutler Corp.*, 726 F.Supp. 494 (S.D.N.Y.1989) (exercising pendent jurisdiction over Human Rights Law claim) *and Selbst v. Touche Ross & Co.*, 587 F.Supp. 1015, 1017 (S.D.N.Y.1984) (exercising pendent jurisdiction) *with Realmuto v. Yellow Freight Sys., Inc.*, 712

F.Supp. 287, 291 (S.D.N.Y.1989) (refusing to exercise pendent jurisdiction over HRL claim in ADEA action because of potential jury confusion on issue of damages); *Burger v. Health Ins. Plan*, 684 F.Supp. 46, 50–51 (S.D.N.Y.1988) (potential for jury confusion one reason for dismissing state claim); *Barbetta v. Chemlawn Servs. Corp.*, 669 F.Supp. 569, 571 (W.D.N.Y.1987) (dismissing human rights complaint because jury confusion likely) *and Alveari v. American Int'l Group, Inc.*, 590 F.Supp. 228, 232 (S.D.N.Y.1984) (retention of state claim would complicate what would otherwise be simple non-jury case).

The cases refusing to exercise pendent jurisdiction are distinguishable from this case. In each of those cases there existed a factor additional to those present here which moved the court to refuse to exercise pendent jurisdiction. In *Realmuto*, for instance, the deciding factor seemed to be that compensatory damages are not available during the ADEA prelitigation, administrative conciliation process. The court found that allowing pendent jurisdiction would dispel the incentive to resolve disputes during conciliation. *Realmuto*, at 291 (citing *Johnson v. Al Tech Specialties Corp.*, 731 F.2d 143, 147 (2d Cir.1984)). In *Burger*, an ADEA case, the court wrote that the issue of jury confusion over the difference between damages under the ADEA and state law alone "probably would not persuade the court to decline jurisdiction." *Burger*, at 50 n. 4. The court chose to decline jurisdiction because plaintiff asked for relief to which she was not entitled and for application of state law on an unprecedented basis. *Id.* at 50. In *Barbetta*, an additional factor weighing in favor of refusing jurisdiction was that plaintiff had asserted a claim for intentional infliction of emotional distress. *Barbetta* at 571. And in *Alveari*, in addition to the issue of jury confusion over the difference between damages for sex discrimination under Title VII and state law, an ambiguity as to whether plaintiff had made an election of remedies persuaded the court to avoid the "procedural thicket" surrounding the state law. *Alveari* at 232 & n. 23.

---

**6.** In truth, the availability of such damages in a Title VII action is presently unresolved in this circuit. *See New York v. Holiday Inns, Inc.*, 656

F.Supp. 675, 684 (W.D.N.Y.1984); *Rio v. Presbyterian Hospital in New York*, 561 F.Supp. 325, 327 (S.D.N.Y.1983).

Because none of these additional factors are present in this case, and because the state and federal claims are factually related such that they should be tried in the same case, considerations of judicial economy, convenience, and fairness weigh heavily in favor of exercising jurisdiction over the state claim.

*Conclusion*

For the foregoing reasons, Defendants' motion to dismiss Drummer's Title VII and state law claims of religious discrimination and harassment is granted. Defendants' motion to dismiss Drummer's Title VII claim against Morrissey for personal liability is also granted. Defendants' motions to dismiss the Title VII claim against Rosenthal is denied as is their motion to dismiss Drummer's HRL claim of sex discrimination.

It is so ordered.